### WILLIAM GREENE,

*vs.*

### WILLIAM DOCKENDORF, et al.

In an action to which his principal is a party, the declarations of an agent may be received against the principal, if the agent was authorized to make them, or if they were brought home to the principal, and he assented to or acquiesced in them, or remained silent when it was his duty to speak, so that the other parties to the action were misled. A principal is not estopped from asserting his title to property by merely entrusting the possession or control of it to an agent, so far as is necessary for the transaction of the business of the agency.

The declaration of an agent cannot be received to establish a real ownership of property in himself, in an action to which he is not a party.

The sufficiency of the evidence in identification of property replevied in this case considered.

Greene v. Dockendorf, et al.

This action was brought in the District Court for Winona County to recover possession of certain railroad ties, alleged by plaintiff to be his property, and unlawfully detained from him by defendants. Issue was joined, and the cause tried before the Court without a jury. The Court found for the plaintiff, and judgment was entered up in his favor against defendants for the value of the ties; from this judgment the defendants appeal to this Court. It appears from the evidence on the part of the plaintiff that he had entered into an agreement with one N. C. Turner on the 11th day of September, 1863, by which Turner, as the agent of plaintiff, was to get out ties on the Chippewa river, run them to McGregor for the McGregor & Western R. R. Co., and after they were all delivered, and all the bills contracted paid, and accounts settled, Turner was to receive for his compensation a certain portion of the net profits; until the delivery the ownership to be in the plaintiff. Under this agreement Greene made advances, and Turner employed men, cut a quantity of ties, represented by him to be some 7,000 or 8,000, commenced rafting them, but failed to get them down the river. In November Turner settled with plaintiff, and released to him all his interest in the ties, plaintiff paying the men employed, and agreeing to pay other claims. The next spring Turner was employed by plaintiff to go up and get the ties down the river.

Defendants on their part attempted to prove ownership of the ties through a purchase from Turner, and for that purpose put in evidence a bill of sale from Turner to them. They offered in evidence the declarations and conversations of Turner in regard to the ties, which were objected to on the part of the plaintiff on the ground " that it was incompetent to bind plaintiff by the declarations of Turner." The Court sustained the objection, and defendants excepted.

One question in the case is whether the ties seized by the sheriff under the writ in this action are the Turner ties. The evidence in regard to this, so far as necessary to an understanding of the points decided, appears in the opinion of the Court.

FRANKLIN & KEYES for Appellants.

NORTON & MITCHELL for Respondent.

*By the Court*—BERRY J.—

I.—If Turner was the plaintiff's agent, his declarations might be received as the declarations of the principal, if the agent was authorized to make them. But there was no offer to show in this case that Greene had given Turner authority to hold himself out as the owner of the ties in question, or to represent that he had power to sell the same on his own account, or in behalf of his principal.

II.—The declarations of Turner might also be received as the declarations of his principal, Greene, although made without previous authority, if it were shown that they were brought home to Greene, who assented to or acquiesced in them, or remained silent when it was his duty to speak, so that the defendants were misled. But no such showing was proposed in this case.

III.—The defendants make the point that "the plaintiff having placed Turner, his alleged agent, in a position to deceive and mislead third parties, and having permitted him to clothe himself with possession—in short, with all the muniments and insignia of property in the ties—is bound by his acts and estopped from denying their validity in this action; and hence, as to defendants, who are purchasers without notice, he cannot claim title in himself." It is true that a sale of property by a vendor without title has been held valid

Greene v. Dockendorf, et al.

where the true owner has pursued such a course as to estop him from asserting his real title. But it has not been considered that this estoppel would be created by merely entrusting the possession or control of property to an agent, so far as is necessary for the transaction of the business of the agency. To hold that an estoppel would be created in this way, would render the employing of an agent so hazardous, that a prudent man would hardly venture to employ one at all. But the difficulty with the proposition of the defendants is, that it rests upon assumptions which there was no offer to prove. While it is true that the possession and control, to some extent, of the ties was vested in Turner by the nature of his employment, it does not appear, nor is there any proposal to show that Greene had *placed* him in a position " to deceive and mislead third parties," any further than he must necessarily do in employing him as an agent to bring down the ties, nor that he had *permitted* him to clothe himself " with the muniments and insignia of property in the ties." Neither declarations nor acts on the part of Turner indicative of a claim on his part to the property of the ties could bind Greene, unless authorized by him, or brought to his knowledge, and assented to in some way. 1 *Sm. L. C.,* 6*th Am. Ed.* 1089, and cases cited. 1 *Gr. Ev., Sec.* 114.

IV.—Turner's declarations certainly could not be received to establish a real ownership of the ties in himself in an action to which he was not a party. To admit them would be to admit hearsay.

V.—The defendants further insist that " plaintiff fails to identify the property seized as any portion of the Turner ties, of which alone he claims to be the owner." It appears that one of the rafts replevied is known as the lower raft. As to the other raft seized there seems to be no evidence that it contained any of the Turner ties. Dockendorf, one of the

defendants, testifies upon his direct examination in behalf of the defendants: "I did not put up the lower raft, and cannot say whether any of the Turner ties were in it." Further on he says: "I do not recollect of rafting any of the Turner ties myself"; and again: "I do not recollect that any of the Turner ties were sent down." This testimony is certainly not very strong. McCraney and Stoneman, witnesses called by the plaintiff, both testify that Curtis, the other defendant, admitted that a part of the Turner ties were in the lower raft. There is other testimony adduced by the defendants tending to show that none of the Turner ties were sent down to Winona, where the lower raft was seized, until after this action was commenced. Now, while there is a conflict of testimony here, it cannot be said that the finding of the Court as to the fact that a part of the ties replevied were a portion of the Turner ties, is unsupported by evidence. Neither can we say that the finding is manifestly against the weight of evidence. There is also testimony going to show that there were as many as twelve hundred of the Turner ties in the lower raft. And there was testimony tending to show that the "old ties" in the lower raft were Turner ties. It cannot be said then that there was no evidence to support the finding of the Court as to the fact that the plaintiff was entitled to twelve hundred of the ties replevied, or that there was no evidence in identification.

Judgment affirmed.