WARDER, BUSHNELL & GLESSNER COMPANY *vs.* MARKS RUBLEE and another.

November 12, 1889.

**Agency—Sale.**—Verdict *held* not justified by the evidence.

Appeal by plaintiff from an order of the district court for Houston county, *Farmer,* J., presiding, refusing a new trial.

*E. H. Smalley* and *Boyeson & Lawrence,* for appellant.

*W. H. Harries* and *Losey & Woodward,* for respondents.

MITCHELL, J. The assignments of error are quite numerous, but the only question which we find it necessary to consider is whether

the verdict was justified by the evidence. The action was brought to recover possession of certain personal property, of which plaintiff claimed to be the owner. The answer alleged, by way of defence, that the defendant Marks Rublee, for a valuable consideration and in good faith, purchased the property "from one Conrad Laufer, who was then in possession of the same as owner thereof, and who then had legal right and lawful authority to sell the same," and that thereafter the defendant Abraham Rublee bought the property from Marks. There is no doubt, on the evidence, that at the time of the pretended purchase by defendant Marks from Laufer the property in question belonged to plaintiff, and was in the possession and custody of Laufer, as its agent. The undisputed evidence also shows that plaintiff was a manufacturer of farm machinery, consisting of binders, reapers, and mowers, and that Laufer was, or had been, its local agent at a small place called "Eitzen" for the sale of these machines; also that, in accordance with the usual and well-known usage in that business, the plaintiff delivered to Laufer a considerable quantity of what are known in the trade as "commission extras," to be sold by him as its agent. These extras consisted of castings adapted and intended to supply the place of corresponding parts of machines of plaintiff's make which might be broken or worn out. They were listed to Laufer at the prices at which he was to sell them, and he was to receive for his services in selling a commission percentage on the amount of sales, and on an accounting of this commission business the extras which remained unsold were to be delivered back to plaintiff. The written contract of agency contains no express limitation as to the quantities in which these extras were to be sold by Laufer, but its provisions imply, and the other evidence in the case shows, that it was the intention and understanding that they were to be sold at retail, as persons who had purchased machines of plaintiff's manufacture might from time to time call for them. Indeed we think a court would be justifiable in taking notice of the fact that such, and not job sales of the whole stock in mass by local agents, is the usual, if not the universal, mode of conducting the business; also that the only demand for such extras for actual use comes from those who have machines of that make, for, except to supply breakages on such

machines, such extras are of no value except as iron.   There was some evidence in the case showing that, prior to the sale to defendant Marks, Laufer's agency to sell had been terminated, and that the property was thereafter left with him as a mere bailee or custodian.   As there was apparently nothing to advise third parties of this fact, we pass this evidence by as unimportant for present purposes.   In February, 1887, Laufer assumed to sell out the whole stock of extras in his possession, amounting in value to $465, to defendant Marks for $75 in cash and $25 in trade, appropriated the proceeds to his own use, and left the state.   There can be no doubt, on these facts, that this sale was, on part of Laufer, a fraud on plaintiff, and would pass no title to the property unless the sale was within the apparent authority of Laufer, and defendant Marks was a purchaser in good faith for value.   The undisputed evidence is that Marks was a peddler in a small way, not engaged in, or, so far as appears, expecting to engage in, the machinery business; that he was, and for a year and a half had been, a member of Laufer's family, and hence presumably having some knowledge of his business; that he knew that Laufer was the local agent of plaintiff for the sale of its farm machinery, and had seen its travelling agent there transacting business with him in relation to such agency; that before he bought he knew that Laufer was about to leave the state, and had heard that he had some difficulty with plaintiff; also that he knew that the property which he was buying for $100 was worth $465.   While he pretended to claim on the trial that he supposed the extras belonged to Laufer, yet he does not pretend that he did not know that they came from plaintiff.   Indeed, if he knew that the machines were manufactured by it, he could not well be ignorant of the fact that the extras were also.   In view of all these facts, and especially that the transaction was so unusual an one, and that Laufer was sacrificing the property for one-fifth of its value, it is difficult to understand how any man of ordinary intelligence could have failed at least to have been put on inquiry as to the authority and good faith of Laufer.   And yet, with all these facts before him, Marks purchased, not only without making any such inquiry, but apparently studiously avoiding to do so. His subsequent conduct emphasizes these doubts as to his good faith,

for a few days afterwards he sells the property wholly on credit to his brother Abraham, a young man without a dollar of property, who was working for $25 per month, and who was engaged in no business, and was possessed of no facilities, which would enable him to use the property to any advantage; and then the two brothers together remove the property (for which they gave a very unsatisfactory reason) across into Iowa, and only bring it back apparently after they had been threatened with criminal prosecution. It is unnecessary to say anything regarding the good faith of defendant Abraham, as he confessedly had notice of every fact that his brother had.

In view of another trial, we do not wish to characterize this transaction further than to say that in our judgment the verdict ought not to stand. It is a well-known fact that lay jurors, however honest or intelligent, are very liable, in cases of this kind, to "stick in the bark" of the transaction, and to fail to give due weight to circumstantial evidence constituting, in legal language, ear-marks or badges of fraud. In the present case it seems to us that the jury must have fallen into this error to such an extent as to call for the exercise of the corrective power of the court so far at least as to require that the case be submitted to another jury. We may also be excused for suggesting that the attention of the jury seems to have been diverted from the main question in the case to a consideration of provisions in the contract between plaintiff and Laufer, and of abstract propositions of the law of agency, which had little or nothing to do with the issues,—a fact for which counsel themselves were largely responsible. This renders it unnecessary to consider the various assignments of alleged errors of law occurring on the trial. We suggest, however, that in one part of his charge to the jury the learned judge, in our opinion, fell into serious error. He charged, in substance, that if a man deals with an agent, knowing him to be an agent, he is bound to ascertain the extent of his authority; but if he deals with one who is really an agent, but deals with him as a principal, honestly believing him to be such, the rule does not apply; therefore, if they believe that Marks purchased the goods of Laufer as the owner of them, honestly believing him to be such, and in good faith, then the verdict should be for the defendants. The last part of the charge implies that if the owner of prop-

erty delivers the possession of it to another for any purpose, even as a naked bailee, and if he, pretending to be the owner, sells it to another, who buys honestly believing him to be the owner, the vendee can hold it as against the rightful owner. No doubt the owner of property may by his conduct so clothe another with the *indicia* of ownership, and the right to dispose of it, that he would be estopped from asserting his actual ownership against an innocent purchaser for value; but it was never held that such an estoppel would arise from the mere fact that the rightful owner had intrusted the possession of personal property to another. If such were the law it would, as is said in *Greene* v. *Dockendorf*, 13 Minn. 66, (70,) render the employment of an agent so hazardous that a prudent man would hardly dare employ one.

Order reversed.

NOTE. A reargument of this case was denied November 20, 1889.