ALFRED H. HEDDERLY vs. EDWARD W. BACKUS.

Argued Jan. 20, 1893. Decided April 7, 1893.

**Verdict for Defendant Ordered.**

*Held* that, upon the undisputed evidence, defendant was entitled to a verdict.

**Bailee's Fraudulent Sale of the Chattel, Gives no Title.**

The custody of personal property by a bailee is consistent with the title of the owner, and, in the absence of conduct on the part of the owner operating to mislead a purchaser, the latter can acquire no title through a fraudulent sale by the bailee.

Appeal by plaintiff, Alfred H. Hedderly, from an order of the District Court of Hennepin County, *Smith*, J., made August 22, 1892, denying his motion for a new trial.

By his complaint the plaintiff alleged that the defendant, Edward W. Backus, on September 26, 1891, at Minneapolis, took, carried away and converted to his own use a certain dark bay stallion, three years old, worth $1,000, belonging to plaintiff, to his damage that sum, and he demanded judgment for that amount. Defendant denied that the plaintiff owned the horse. On the trial it was shown that J. C. McNaughton on April 3, 1891, sold the horse to plaintiff and gave him a bill of sale. On the same day plaintiff employed McNaughton to board and train this horse and two others owned by him, and left all three of them with McNaughton for that purpose. Defendant then proved that Frank Thurston of Lake Crystal raised and owned the horse, and on October 18, 1890, sold him to defendant, and sent him by rail to defendant at Minneapolis, and that defendant employed McNaughton to keep and train the horse. On April 17, 1891, defendant paid McNaughton $63.75 for keeping and training the horse, and took him away. McNaughton died September 26, 1891, and soon after plaintiff demanded the horse of the defendant and brought this action. At the trial after the evidence was all given, the Judge directed the jury to return a verdict for defendant. It was done, and plaintiff appeals.

*L. R. Larson,* for appellant.

The case should have been submitted to the jury. It was error for the judge to direct a verdict for defendant. There was evidence to sustain a verdict for plaintiff. *Cochran* v. *Stewart,* 21 Minn. 435; *Globe Milling Co.* v. *Minneapolis Elevator Co.,* 44 Minn. 153; *Nixon* v. *Brown,* 57 N. H. 34.

*White & Egelston,* for respondent.

It is conceded that McNaughton was in the custody of the horse at the time he undertook to sell him to plaintiff. Proof of possession, unexplained, creates the presumption of ownership, but it is a mere presumption, the lowest species of evidence, and it is liable to be overthrown by any evidence showing the character of the possession, and that it is not necessarily as owner. By undisputed evidence introduced by both parties, McNaughton's possession was explained, and he was shown to be a mere bailee for hire. *Rawley* v. *Brown,* 71 N. Y. 85; *Lowery* v. *Erskine,* 113 N. Y. 52. The custody of the property by McNaughton as a matter of law stands for nothing, and it was not error in the court, to refuse to submit that question to the jury.

VANDERBURGH, J. The undisputed evidence, we think, would require the jury to find that the horse in controversy belongs to the defendant.

It is clear that his title is superior to that of plaintiff. He purchased the horse of one Thurston on the 18th day of October, 1890, and paid $1,000 for him.

He was turned over to one McNaughton to keep for the defendant. It is true that McNaughton, who procured a subsequent bill of sale of the horse of Thurston, assumed to sell the horse to the plaintiff in April, 1891, while in possession of him, for the sum of $130, but no title did or could pass by that sale. The fact that McNaughton held the horse as bailee of the defendant did not give him colorable authority to sell, nor work an estoppel against defendant.

His custody as bailee was entirely consistent with the defendant's

ownership. *Rawley* v. *Brown*, 71 N. Y. 85; *Lowery* v. *Erskine*, 113 N. Y. 52, (20 N. E. Rep. 588.)

The possession of McNaughton, while evidence of ownership, was, of course, not conclusive; and it does not appear that defendant held him out as owner, or acquiesced in his claim of ownership, or, by any act or omission of his, misled the plaintiff, to his prejudice. Plaintiff, therefore, purchased of McNaughton at his peril, and must look to him, or his legal representatives, for his damages.

It is also true that, in the fall of 1890, defendant, having learned that McNaughton had a subsequent bill of sale of the horse from Thurston, and that he had made a bill of sale of him to one Bruce, paid the latter $100, to avoid a lawsuit. But we fail to see any connection between this circumstance and the plaintiff's title to the horse, or that it is any evidence in support of it, since it was clearly established that defendant's title was, in any event, prior and superior to that of McNaughton, or any one claiming under him. Plaintiff failed to make a case for the jury, and the court properly directed a verdict for the defendant.

Order affirmed.

(Opinion published 55 N. W. Rep. 116.)

Application for reargument denied April 19, 1893.