## GEORGE B. NORRIS and Another v. BOSTON MUSIC COMPANY.[1]

March 26, 1915.

Nos. 19,084—(278).

**Conditional sale.**

1. If the contract under which the owner delivers personal property to another to sell contemplates that the title shall never pass to the other, and imposes no obligation upon him ever to pay the purchase price, it does not constitute a conditional sale of the property.

**Bailment with power of sale.**

2. A contract under which the owner delivers property to another to sell, and which provides that the title to the property shall remain in the owner until sold to an actual purchaser, and that all property not so sold, and the proceeds of all sales, shall be returned to such owner, and which imposes no obligation upon the other party to pay the purchase price for any of the property, constitutes a bailment with power of sale and not a conditional sale.

[1] Reported in 151 N. W. 971.

---

Note.—For apparent ownership of bailee as affecting right of bailor to claim title against bailee's vendees or creditors, see note in 25 L.R.A.(N.S.) 761, 776.

**Recovery of property from purchaser.**

    3. A bailor may pursue his property and reclaim it, even in the hands of a good faith purchaser from or under the bailee, unless estopped by his own conduct from causing loss to such purchaser. And this is equally true where property is consigned to a factor to sell, who wrongfully disposes of it to satisfy his own debt.

**Same — estoppel of owner.**

    4. Where the owner ships property to a factor and the factor wrongfully executes a bill of sale therefor to one having notice of his wrongdoing, and thereafter such vendee sells to another to whom he exhibits his bill of sale, and who without the production of the bill of lading, and without knowing or inquiring the source of the factor's title, and without knowing or inquiring by whom or on what conditions the property had been shipped, takes it while still in the car in which it had been shipped to the factor, the owner is not estopped from reclaiming his property.

Action in the district court for St. Louis county by the receivers of the Segerstrom Piano Manufacturing Co. to recover possession of 14 upright pianos or $1,500, the value thereof. The case was tried before Fesler, J., who made findings and ordered judgment in favor of defendant. From an order denying their motion to amend the findings and conclusions of law or for a new trial, plaintiffs appealed. Reversed.

*Fryberger, Fulton & Spear,* for appellants.
*Washburn, Bailey & Mitchell,* for respondent.

TAYLOR, C.

In January, 1913, the Segerstrom Piano Manufacturing Co. entered into the following agreement with the Wisconsin Music Co. of Superior, Wisconsin:

## "CONSIGNMENT CONTRACT.

"The undersigned Wisconsin Music Co., Superior, Wis., hereinafter referred to as second party, hereby enters into mutual agreement with Segerstrom Piano Mfg. Co., hereinafter designated as first party, to sell pianos furnished by first party on consignment—upon the following terms and conditions.

"All pianos shipped to second party and all money, notes, contracts and leases and proceeds of sales, shall be and remain at all times the property of first party free from liens and encumbrances or claim of creditors of second party until such pianos are sold to private purchasers and the proceeds thereof delivered to first party.

"Purchaser's notes, contracts, or leases shall be made upon blanks furnished by first party, and shall draw interest at not less than 6 per cent, and all such papers, when approved by first party, shall be endorsed by second party, and the payment of the same including the instalments guaranteed at maturity; and the second party does hereby waive protest and notice of protest on the same.

"Second party agrees to sell all instruments consigned, within four months from date of shipment; or if any of said instruments remain unsold after four months, second party agrees to pay interest after that time on the same, at the rate of 6 per cent per annum on the invoice price; but it is expressly understood that the charge of said interest and the payment thereof shall not be construed as indicating a sale of said instrument to second party.

"The compensation for selling these instruments shall be such amount as second party shall obtain in excess over the price the said instrument is billed to him. On cash sales the commission shall be payable when the first party receives pay for the instrument. On time sales the first payment may be retained by second party if the same does not exceed the commission on the sale; the balance of said commission, if any, to be paid to second party as first party receives money from the purchaser after the invoice price has been paid.

"All instruments taken back from customers on account of default of payments, or for other causes, and all new or second-hand instruments taken in exchange, or in part payment, for instruments consigned by first party, are to be regarded the same as goods consigned, and to be accounted for in the same manner. Second party agrees to send first party a statement the first day of each and every month of all instruments received and sold, and remaining on hand, unsold, and make prompt returns as sales are made.

"Upon the demand of first party or of its agent, second party

will deliver as first party may direct, free of charge or expense of any kind to first party, any and all of the said goods remaining unsold at the time of said demand, including the original packing cases of same. All goods returned to first party to be passed to second party's credit at 90 per cent of original bill, the balance, 10 per cent, being deducted for the depreciation and shopwear of goods, except instruments which have been taken in exchange or trade from customers or for default in payment on notes or leases, such stock to be credited at a fair cash value, to be determined by first party. Second party agrees to pay all freight, taxes and expenses, and to insure all stock against loss by fire, loss payable to Segerstrom Piano Mfg. Co.

"This agreement may be terminated at any time by either party, and any stock then on hand will be subject to the order of the first party."

Plaintiffs were appointed receivers of the manufacturing company and as such shipped a carload of pianos to the music company. While the above agreement was made before the appointment of the receivers, it sufficiently appears that this shipment was made thereunder. When the car reached Superior and before it had been unloaded, the music company gave a bill of sale of the pianos to one of their creditors, as security for his claim, under a verbal agreement that the pianos should remain in the car for 10 days, and be returned to the music company if they paid the debt within the time. The bill of sale purported to transfer the property absolutely and was accompanied by an order directing the railway company to deliver it to the vendee. Contrary to his promise, the creditor on the same day that he received his bill of sale, sold the pianos to defendant, and defendant took them from the car and placed them in its store at Duluth. As soon as knowledge of these transactions reached plaintiffs, they demanded the pianos from defendant, and, the demand being refused, brought this action to recover possession of them. The trial court found that defendant was a good faith purchaser for value, and held that the above agreement was a contract of conditional sale, and was void as against defendant because not filed in the office of the city clerk as required by the

Wisconsin statute, and that defendant was entitled to judgment. Plaintiffs moved for a new trial; the motion was denied, and they appealed.

1. The question to which both parties have devoted the greater part of their brief and argument is whether the above agreement constituted an agency and created a bailment only, or whether it constituted a conditional sale of the pianos. Agreements are occasionally so drawn that it is difficult to determine whether they constitute a conditional sale or a bailment; but there are certain distinguishing tests which usually make the matter clear. A sale contemplates that, at some time, the title shall pass to the vendee, and that, at some time and in some manner, he shall pay the purchase price. A bailment contemplates that the title shall not pass to the bailee but remain in the bailor, and that the property shall be returned to the bailor, or be disposed of as he shall direct.

When we examine the contract in controversy to determine its purpose and effect, we find that the music company never becomes the owner of the pianos, and is not even given an option to buy them; that it nowhere obligates itself to pay for them, but only to account for the proceeds received upon sales to others; that it must return to plaintiffs all pianos not sold to actual purchasers whenever directed so to do; and that it may terminate the arrangement whenever it chooses and return all pianos then on hand. We further find that plaintiffs remain owners of the pianos until sold to private purchasers, with the right to recall them at any time before sale; that they can compel the music company to account for and turn over the proceeds of all sales, but cannot compel the music company, itself, to take any of the pianos or pay for any of them; and that they may terminate the arrangement at any time and thereupon must take back all pianos then on hand. The contract imposed onerous burdens upon the music company, including the obligation to pay interest upon pianos not sold within four months, and 10 per cent as depreciation upon those returned, but plainly does not intend that the company shall ever own the pianos or pay the purchase price for them. It plainly does intend that they shall remain the property of the consignor until sold to an actual pur-

chaser by the consignee, and shall be returned to the consignor unless so sold. The contract contains all the essentials of a factorage bailment, but does not contain the essentials of a sale. It constituted a bailment with power to sell, but did not constitute a conditional sale to the bailee, and is not within the statute requiring contracts of conditional sale to be recorded. In re Columbus Buggy Co. 143 Fed. 859, 74 C. C. A. 611; In re Flanders, 134 Fed. 560, 67 C. C. A. 484; In re Galt, 120 Fed. 64, 56 C. C. A. 470; Metropolitan National Bank v. Benedict Co. 74 Fed. 182, 20 C. C. A. 377; Union Stockyards & Transit Co. v. Western Land & Cattle Co. 59 Fed. 49, 57 C. C. A. 660; Eilers Music House v. Fairbanks, 80 Wash. 379, 141 Pac. 885; National Bank v. Goodyear, 90 Ga. 711, 16 S. E. 962; Furst v. Commercial Bank, 117 Ga. 472, 43 S. E. 728; Cortland Wagon Co. v. Sharvy, 52 Minn. 216, 53 N. W. 1147; Williams v. McGrade, 13 Minn. 165 (174); Monitor Mfg. Co. v. Jones, 96 Wis. 619, 72 N. W. 44.

2. The trial court found that defendant was a good faith purchaser for value. As the evidence was such that the court could have found either way upon that question, the finding must stand although the evidence to support it is weak. Defendant contends that being a good faith purchaser it acquired a valid title as against plaintiffs, and in support of this contention cites Cochran v. Stewart, 21 Minn. 435, and other cases which hold that, if a vendee whose title is voidable for fraud sells the property to a good faith purchaser, the purchaser acquires a valid title. Such cases show the desire of the law to protect good faith purchasers, but are not in point, for there the original vendor in fact vested title in the vendee, while here he retained the title in himself. Being the owners of the property, plaintiffs have the right to reclaim it unless debarred therefrom by some principle of estoppel. They intrusted the property to an agent with power to sell. The agent, to secure his own debt, wrongfully purported to make an absolute sale of the property to one of his creditors. The creditor wrongfully sold the property to defendant, who purchased and paid for it in good faith.

It has always been the law that a bailor may pursue his property and reclaim it, even in the hands of a good faith purchaser from

or under the bailee, unless estopped by his own conduct from causing loss to such purchaser. Warder, Bushnell & Glessner Co. v. Rublee, 42 Minn. 23, 43 N. W. 569; Hedderly v. Backus, 53 Minn. 27, 55 N. W. 116; Baker v. Taylor, 54 Minn. 71, 55 N. W. 823; also cases cited in note found in 25 L.R.A.(N.S.) at page 760. If the owner consigns his property to a factor for sale, and the factor pledges it for his own debt, or sells it to a creditor to apply on such debt, the same rule applies. In Warner v. Martin, 52 U. S. [11 How.] 209, 13 L. ed. 667, merchandise intrusted to a factor for sale was sold to one Warner, a creditor of the factor, to apply on the factor's debt, and a portion of it was thereafter sold by Warner to Heald, Woodward & Co. who were good faith purchasers. The court say:

"A factor or agent who has power to sell the produce of his principal has no power to affect the property by tortiously pledging it as a security or satisfaction for a debt of his own, and it is of no consequence that the pledgee is ignorant of the factor's not being the owner. * * * By the common law, the transfer of the plaintiffs' tobacco to Warner cannot be maintained. He is responsible to them for the value of so much of it as was not transferred by him to Heald, Woodward & Co. Heald, Woodward & Co. are responsible for so much of it as Warner transferred to them, because Warner, having no property in it, could not convey any to them."

The rule is stated in 19 Cyc. 174 as follows:

"In the absence of statutes which furnish protection to persons dealing with factors, the principal can recover his property wherever he can trace it as distinct from that of the factor into whomsoever's hands it may have come. He is entitled to recover the specific goods themselves if they can be had, and if the goods themselves cannot be recovered he may recover their proceeds if they can be traced. Thus if a factor barters his principal's goods in a manner not authorized by the principal and not within the ordinary modes of transacting business, the principal may follow and reclaim the property whether the person dealing with the factor knew him to be such or not. But if the principal has by any act of his own induced a third person to believe he has given the factor authority

to dispose of the goods the principal cannot reclaim them. The principal may recover goods or the proceeds of a consignment of a person to whom they were turned over in the payment of an antecedent debt due from the factor."

In Eilers Music House v. Fairbanks, 80 Wash. 379, 141 Pac. 885, plaintiff consigned a quantity of player pianos to a factor for sale. The factor sold one of them to apply on his own debt to a creditor having notice of the bailment. The creditor sold it to a good faith purchaser. Plaintiff brought replevin against the purchaser. The Washington court quote the above excerpt from Cyc. and then say:

"This rule applies to a purchaser without notice from one who has acquired possession of property from a factor through barter or exchange, or in consideration of a pre-existing debt. Warner v. Martin, supra. This is true because one who purchases from a factor in consideration of a pre-existing debt, or in part consideration of a pre-existing debt and barter or exchange, acquires. no title, and, having no title, can pass none. This rule, of course, is subject to the equitable principles of estoppel, where the facts are such as to bring the case within them; but there are no such facts present in the case at bar."

A large number of cases bearing upon the same question are cited in a note found in 28 Ann. Cas. at page 1290.

3. The remaining question is whether plaintiffs are estopped from reclaiming the pianos from defendant. When defendant purchased the pianos they were in a car standing upon a side track in the railroad yard at Superior. Defendant's vendor exhibited a bill of sale from the Wisconsin Music Co., and an order from that company directing the railroad company to deliver them to such vendor. Defendant knew that the pianos were not being sold in the ordinary course of business, but considered that it was getting a bargain and that its vendor was responsible. Defendant did not know who had shipped the pianos; did not know from whom, or in what manner, or under what conditions, the Wisconsin Music Co. had acquired them, and made no inquiry from anyone concerning any of these matters. Neither defendant nor its vendor ever had possession of

the bill of lading, so far as the record discloses, and defendant never made any inquiry concerning it. Defendant knew merely that the pianos were in the car and that the music company had executed a bill of sale for them to defendant's vendor accompanied by an order on the railroad company to deliver them, and frankly admits that it neither learned nor sought to learn anything more concerning them. We find nothing which can be held to estop plaintiffs from reclaiming their property. Freeman v. Kraemer, 63 Minn. 242, 65 N. W. 455; Kiewel v. Tanner, 105 Minn. 50, 117 N. W. 231, 25 L.R.A.(N.S.) 772.

Order reversed.