# EVERETT J. MOBERG v. COMMERCIAL CREDIT CORPORATION AND OTHERS.[1]

March 31, 1950.

No. 35,082.

[1]Reported in 42 N. W. (2d) 54.

470

*Stiening, Olson & Thysell,* for appellant.
*Sharp & Saetre* and *J. E. Hendrickson,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying defendant's motion for a new trial.

This appeal arises out of a replevin action brought by plaintiff against Commercial Credit Corporation and John D. Flynn and J. Daniel Flynn, a copartnership doing business as Flynn Motor Service. At the trial the action was dismissed against defendants Flynn.

On July 10, 1948, plaintiff, a North Dakota farmer, left his 1947 Studebaker automobile for sale on consignment with E. L. Lindemann, a used-car dealer at Moorhead, Minnesota, doing business as Lindemann Motor Company, referred to hereinafter as the dealer. On August 14, 1948, the dealer sold the Studebaker to one L. R. Stennes for $500 cash and a 1947 Nash automobile, after having received authority through plaintiff's brother in Fargo to make the sale on that basis. Plaintiff claims that after this sale had been consummated he left the Nash car in the custody of the dealer to be sold. On August 17, 1948, the dealer borrowed $1,100 from defendant, giving it a note in that amount, secured by a purported mortgage on the Nash car. The mortgage was due in one month and provided in part that if the dealer breached any of its terms or failed to pay the note when due, or if the mortgagee should deem itself or the merchandise insecure, the note would become due and payable immediately at the mortgagee's option. The mortgage further provided that the mortgagee might enter any premises and take possession of the merchandise without notice, demand, or legal process and sell the same at public or private sale. On September

17, 1948, when the note and mortgage became due, the dealer was in default and apparently in financial difficulties. Thereafter, on October 28 or 29, defendant seized the automobile and removed it from the dealer's garage. On October 30, 1948, plaintiff and his brother went to the dealer's garage to get the Nash car, inasmuch as the dealer had failed to sell it. They were then informed that defendant had taken the car a short time before and that the dealer was not at the garage any longer.

While at the dealer's garage on October 30, plaintiff talked with Paul R. Hohn, a representative of defendant. Plaintiff said that Hohn told him that they (defendant) had the Nash car and asked plaintiff to show him the registration card, which he did. He claimed that after showing Hohn the card he asked him to return the Nash, but was told that he could not give him the car on just the registration card. "He said as far as they were concerned it was just another piece of paper." Plaintiff identified the registration card on the Nash and said that he first got it on October 30, 1948, while at the garage and that at that time the name of L. R. Stennes only was on the bill of sale on the back of the card, the latter having signed it in blank; that later he handed the card to his brother Abner, who inserted the words "Everett J. Moberg," "Mohall," and "Renville." He placed a valuation of $1,800 on the Nash at that time. He further said that the dealer did not pay him the $500 involved in the sale of the Studebaker to Stennes. He claimed that the first time he learned of the sale of the Studebaker was in August 1948, but that he knew before and after that the Studebaker was to be sold and "that this Nash deal was coming up"; that he never dealt with the purchaser of the Studebaker, since he left that entirely to the dealer and his brother Abner.

Plaintiff's brother Abner testified that he had suggested to plaintiff that he take the Studebaker to the dealer and that he went with plaintiff to the dealer's garage on July 10, 1948, when the Studebaker was delivered. He said that the dealer discussed with him the proposed sale of the Studebaker for $500 and the Nash car before the deal was made and that he authorized the dealer to "go ahead,

if he would sell the Nash, and he said he would." He claimed that he contacted the dealer several times after the latter received the Nash car, which he had also seen, and that on one occasion the dealer told him about a prospect he was working on and requested him to come back to the garage the next morning, as he was sure the car would be sold, but that no sale was made. Abner said that after this deal fell through he talked with the dealer several other times and was informed that other deals were pending on the Nash, but that none of them materialized, and that he (Abner) was with plaintiff on October 30, 1948, when they went to the dealer's garage and asked for the Nash car, and that it was not there. He substantially corroborated plaintiff's testimony with reference to the conversation with Hohn, defendant's representative, at the garage at that time and said that he filled in his brother's name on the registration card for the Nash. He testified that after talking with Hohn he and plaintiff later talked with another representative of defendant at its office in Fargo and asked him for the Nash car, but that it was not given to them. He testified that from the time the Studebaker was sold until he and plaintiff went to the dealer's garage on October 30 to pick up the Nash the dealer had power to sell the Nash. When shown the registration card on the Nash, he said that it was given to plaintiff when they called at the dealer's garage on October 30 and that at that time the registration card was in blank except for the signature of L. R. Stennes on the back.

Paul R. Hohn, district representative of defendant, testified that on other occasions his company had loaned money to the dealer, who was known as a buyer and seller of used cars, and that it made a loan to him on August 17, 1948. He identified a certified copy of what he described as "a wholesale chattel mortgage" on the Nash car involved and said that it was executed by the dealer in his presence. Hohn said that he was requested to come to the garage on August 17, 1948, by the dealer, as the latter wanted to place a mortgage on a 1947 Nash car which the dealer claimed to own; that he personally examined the car and the registration card, both of which he claimed were in the dealer's possession at the time.

He testified, however, that there was no name on the bill of sale on the back of the card at the time he saw it, except the plain, unacknowledged signature of L. R. Stennes; that the dealer offered this car as security; and that he checked the numbers at that time on the Nash car against the registration card and that they "checked." He admitted that at that time he noticed that the dealer's name was not on the card, but claimed that that was the usual way business was transacted by many automobile dealers and that it was customary for registration cards, signed in blank by previous owners, to be held by dealers.

There is a conflict in the testimony here whether the dealer even had the registration card for the Nash car in his possession at or prior to the time he executed the purported mortgage to defendant. Hohn, its representative, said that the first time he saw the card was between 9 and 12 o'clock on the morning of August 17, 1948; that the mortgage was executed that same morning; and that, although Stennes' signature was the only one appearing on the card, he did not contact Stennes to learn if he had any interest in the car. He testified that at the time the mortgage was made he checked the records in the office of the register of deeds of Clay county, but that he did not find any record there of a bill of sale conveying title to the dealer.

On the other hand, L. R. Stennes testified that he purchased the Studebaker on August 14, 1948, and at that time delivered the Nash car and $500 to the dealer, but that he did not deliver the registration card to the dealer on that day. While at first he said that he was not sure when he took the registration card to the dealer, upon refreshing his recollection he said on rebuttal:

"I know it wasn't delivered prior to 4:00 or 5:00 o'clock on Tuesday afternoon [August 17]; *it would have been completely impossible;* and it is very probable it could have been Wednesday [August 18], *but I know it couldn't have been prior to Tuesday evening.*" (Italics supplied.)

Claude D. Mick, formerly associated with the dealer in the implement business and employed by him during most of the time involved herein, was in charge of the garage on October 30 when plaintiff and his brother came to get the Nash. He said that the dealer left a day or two before and that so far as he knew he never came back to take care of the business. On that day, he gave plaintiff the registration card on the Nash, signed in blank, and said that the dealer had authorized him to do so, but that he could not return the car to plaintiff when requested, since it was then in the possession of defendant. He explained that the dealer bought and sold used cars; that the Nash in question had been offered for sale to various persons during the time it was in the dealer's possession; that during that time plaintiff's brother Abner had called frequently at the garage to find out what progress was being made with reference to the sale of the car; and that so far as he knew the dealer never claimed that he owned the Nash.

The court found that on or about August 14, 1948, plaintiff became the owner and entitled to the immediate possession of the Nash car, and that ever since that date he has been the owner and entitled to the immediate possession of the car; that on or about October 29, 1948, defendant wrongfully and unlawfully took possession of the car and has since wrongfully and unlawfully kept and detained it from plaintiff, although the latter duly demanded possession of it; and that at the time defendant took possession of the car and at the time of the commencement of the action the reasonable value of the car was $1,800. It concluded that plaintiff was entitled to judgment against defendant adjudging him to be the owner and entitled to the immediate possession of the car and that in the event possession of the car could not be had by plaintiff he have judgment against defendant in the sum of $1,800 and interest.

The principal questions for our consideration, under the facts and circumstances here, are whether there is sufficient evidence to sustain the decision of the trial court and whether plaintiff is estopped from claiming title to the automobile involved.

Viewing the evidence in the light most favorable to the prevailing party, as we must, it is our opinion that the evidence is sufficient to sustain the findings of the trial court. It is also implicit in the findings that plaintiff was not estopped from claiming title to the Nash car. With reference to this, the court commented in its memorandum:

"There is nothing in the evidence to warrant a finding that the plaintiff is estopped from asserting his rights to the property as against the defendant Commercial Credit Corporation."

■ It is very evident from the record that plaintiff merely left the Nash car with the dealer with authority in him to sell it; that the dealer did offer it for sale to various prospects; and that he never had any authority from plaintiff to mortgage it. A power to sell and convey does not include a power to mortgage. 1 Dunnell, Dig. § 160; Morris v. Watson, 15 Minn. 165 (212).

"* * * According to the weight of judicial authority, which is in accord with the rule adopted by the American Law Institute, in the absence of an agreement or manifestation of intent to the contrary, mere authority to sell property does not, by implication, confer authority to mortgage such property. This rule has been applied to an agent authorized to sell and convey real estate, and as to an authority to sell personal property." 2 Am. Jur., Agency, § 157.

■ Defendant submits as the legal question involved: Is the owner of an automobile who leaves it with another, together with the registration card for it, signed in blank by himself, estopped to claim title to the automobile and to deny the validity of a mortgage which the person in possession of the automobile and the registration card, signed in blank, has given to an innocent third party, relying upon the possession of the automobile and the signed registration card?

Equitable estoppel has been defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law

and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy. 2 Dunnell, Dig. & Supp. § 3185, and cases cited under note 2.

In connection with the sale of personal property, this court said in Gustafson v. Equitable Loan Assn. 186 Minn. 236, 243 N. W. 106, that the modern rule is that where the owner of personal property so clothes another with indicia of title as to deceive a bona fide purchaser, who relied upon such indicia of title, the purchaser will be protected against the true owner. See, also, MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408; Cochran v. Stewart, 57 Minn. 499, 59 N. W. 543; Ammon v. Gamble-Robinson Comm. Co. 111 Minn. 452, 127 N. W. 448; Olsen v. G. N. Ry. Co. 139 Minn. 316, 166 N. W. 331. We said also in the Gustafson case (186 Minn. 241, 243 N. W. 108):

"* * * In order that the real owner of personal property may be estopped from asserting his title against a person who has dealt with one in possession in faith of his apparent ownership, it is the general rule that something more than mere possession and control is necessary. The authorities indicate that possession must be accompanied by indicia of title. Greene v. Dockendorf, 13 Minn. 66 (70); Warder, B. & G. Co. v. Rublee, 42 Minn. 23, 43 N. W. 569; Hedderly v. Backus, 53 Minn. 27, 55 N. W. 116; Baker v. Taylor, 54 Minn. 71, 55 N. W. 823; Bjork v. Bean, 56 Minn. 244, 57 N. W. 657; Freeman v. Kraemer, 63 Minn. 242, 65 N. W. 455; Kiewel v. Tanner, 105 Minn. 50, 117 N. W. 231, 25 L.R.A.(N.S.) 772; Norris v. Boston Music Co. 129 Minn. 198, 151 N. W. 971, L. R. A. 1917B, 615; Tousley v. First Nat. Bank, 155 Minn. 162, 193 N. W. 38; Cardozo v. Fawcett, 158 Minn. 57, 196 N. W. 809; Hayes v. Midland Credit Co. 173 Minn. 554, 218 N. W. 106; Loring v. Swanson, 180 Minn. 104, 230 N. W. 277."

It is our opinion here that, although the dealer had possession of the Nash car at the time the purported mortgage was executed, he had no such indicia of title, even on defendant's own testimony, as to estop plaintiff from claiming title to the car. While Hohn, defendant's representative, claims to have seen the card that morning, he admits that the dealer's name appeared nowhere on the card; that there was no name on the bill of sale on the back of the card; and that it was signed only in blank by L. R. Stennes.

■ M. S. A. 168.15 provides in part:

"* * * When any person seeks to become the owner by gift, trade, or purchase of any vehicle for which a registration certificate has been theretofore issued under the provisions of this chapter, he shall join with the registered owner in transmitting with his application the registration certificate, with the assignment and notice of sale duly executed upon the reverse side thereof, * * *."

Here, we have a situation where there was no compliance with the provisions of the statute. While registration does not determine or affect title (Bolton-Swanby Co. v. Owens, 201 Minn. 162, 275 N. W. 855), it is prima facie, but not conclusive, evidence of title in the party in whose name the car is registered. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582. It is the registration that constitutes prima facie evidence of title in the registered owner. Here the dealer was not the registered owner; he was not even the prima facie owner. Even if he had the registration card in his possession at the time defendant's representative claims that he saw it, with the bill of sale signed in blank by L. R. Stennes, and not in compliance with the statute, he did not have the certificate of title necessary to constitute prima facie evidence of ownership. However, there is a serious conflict in the testimony, from which the trial court might well have considered that the dealer never had the registration card in his possession until *after* the purported mortgage was executed—Stennes claims that he did not deliver it to the dealer until *afterward*. The trial court had the right to consider that to be the fact, in which case the dealer, of course, had

478

no possession accompanied by indicia of title at the time the purported mortgage was executed.

Our attention has been called to Commercial Credit Corp. v. Dassenko, — N. D. —, 43 N. W. (2d) 299. We think that that case is distinguishable on the facts.

It is our opinion that defendant here was not in the position of an innocent purchaser, but was an experienced loan agency engaged in the business of financing new and used automobiles. If it chose to attempt to take a mortgage from the dealer under the facts and circumstances of this case, it did so at its own risk.

Affirmed.

[1]Reported in 42 N. W. (2d) 59.