DE VRIES et al. v. SIG ELLINGSON & CO.

Civ. A. No. 1828.

United States District Court
D. Minnesota, Third Division.

Oct. 18, 1951.

J. Neil Morton, of St. Paul, Minn., for the plaintiffs.

Wilson, Blethen & Ogle, of Mankato, Minn., and ‑Myers & Snerly, of Chicago, Ill., for the defendant.

BELL, District Judge.

This is an action for conversion of 33 head of cattle. There is diversity of citizenship between the parties and the controversy involves more than $3,000; consequently, the Court has jurisdiction.

The case was submitted to the court without a jury on a stipulation of facts and depositions taken by agreement of the parties. There is no substantial controversy about the facts.

The plaintiffs at all times were partners engaged in assembling and selling livestock at Buffalo Center, Iowa, under the firm name of the De Vries Auction Company.

The defendant is a Minnesota corporation engaged in selling livestock on the market at South St. Paul as a commission merchant and is licensed as a market agency under the Packers and Stockyards Act, 42 Stat. 159, 7 U.S.C.A. § 181 et seq.

Tobias Brackey, not a party to this action, was involved in the transaction as he purchased the cattle in Iowa from the plaintiffs and marketed them in Minnesota through the defendant. Brackey purchased the cattle on April 18, 1950, at an auction held by the plaintiffs for a consideration of $5,567.77 and gave his check on a Lake Mills, Iowa, bank in payment. The sale by the plaintiffs to Brackey was a cash transaction. They had sold livestock to him on many occasions over a period of several years, had received checks in payment and his checks never had been dishonored. The plaintiffs deposited the check given in the transaction here involved in the Farmers Trust and Savings Bank at Buffalo Center, Iowa. In due course it was presented for payment to the bank at Lake Mills on which it was drawn. On April 26, 1950, it was returned to the bank at Buffalo Center with protest and payment refused because of insufficient funds. When the check was presented for payment Brackey had on deposit a balance of $12.62.

Promptly after purchasing the cattle, Brackey took possession of them, loaded them in trucks and forthwith transported them to South St. Paul where he delivered them to the defendant for sale on the market. The defendant had sold livestock for Brackey over a period of several years and on April 19, 1950, sold the consignment here involved, collected the sales price and remitted the proceeds to Brackey. At that time the defendant was without knowledge of any defect in Brackey's title. Thus, the defendant put both the cattle and the proceeds beyond reach of the plaintiffs.

There is no evidence in the record to show that, when Brackey delivered the cattle to the defendant for sale, he submitted a bill of sale, a shipping order or any evidence of ownership or that the defendant made any request for such evidence.

The question here is whether the plaintiffs are required to sustain the loss of their cattle or whether they may look to the defendant in an action for conversion. In effect, the sole question in the case is who shall bear the loss.

The plaintiffs contend: (1) That where property is sold and a check is given in payment such payment is conditional and delivery of title to the property likewise is conditional; (2) that if the check is dishonored title to the property does not pass to the purchaser and anyone not a bona fide purchaser in good faith acting in derogation of the seller's title is guilty of conversion; (3) that a livestock commission merchant or factor is not a bona fide purchaser; and (4) that the Packers and Stockyards Act does not alter his position.

The defendant contends: (1) That where one of two innocent persons must suffer through the wrongful act of a third person, the loss should fall on the one who made it possible for the wrong to be

committed; (2) that the Packers and Stockyards Act requires the defendant, as a public utility, to serve all comers promptly and to receive for sale all livestock consigned to it for sale, that it could not select whom it would serve and hence was not liable for selling livestock to which its principal had no title; and (3) estoppel.

■ Since the decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a federal court exercising jurisdiction over a case on the ground of diversity of citizenship, is not free to follow the "general law" but must apply the state law as declared by the highest state court.

Furthermore, the court in Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 1471, 89 L.Ed. 2079, with reference to this rule said: "Certainly, the fortuitous circumstance of residence out of a State of one of the parties to a litigation ought not to give rise to a discrimination against others equally concerned but locally resident. The source of substantive rights enforced by a federal court under diversity jurisdiction, it cannot be said too often, is the law of the States. Whenever that law is authoritatively declared by a State, whether its voice be the legislature or its highest court, such a law ought to govern in litigation founded on that law, whether the forum of application is a State or a federal court and whether the remedies be sought at law or may be had in equity."

Again, the Supreme Court in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832, held that a federal court has no jurisdiction to modify or reverse a state court decision in diversity of citizenship cases but must follow the decisions of the state court.

■■ Where personal property is sold for cash on delivery and the purchaser pays by check on his bank, such payment is conditional, and the delivery of the property likewise is conditional; and, if the check on due presentation, is dishonored, the purchaser does not obtain title and the vendor may retake the property. A check is not payment when it is tendered by a debtor on his bank; it is a method of transferring the money from the debtor to the creditor. The delivery of the check and the acceptance of it are purely conditional acts, and if the check is dishonored, there is no accord and satisfaction of the debt. There is no presumption that a creditor takes a check in payment arising from the mere fact that he accepts it from his debtor. The presumption is to the contrary. Indeed, the delivery of a check to seller by purchaser is a representation that it is good and will be paid on presentation.

These principles have been thoroughly established in both Iowa and Minnesota: Mulroney Mfg. Co. v. Weeks, et al., 185 Iowa 714, 171 N.W. 36; Crescent Chevrolet Co. v. Lewis et al., 230 Iowa 1074, 300 N.W. 260; Gray Bros. v. Otto, 178 Iowa 854, 160 N.W. 293; Gustafson v. Equitable Loan Ass'n, 186 Minn. 236, 243 N.W. 106; Schnirring v. Stubbe et al., 177 Minn. 441, 225 N.W. 389; J. I. Case Threshing Machine Co. v. Bargabos, 143 Minn. 8, 172 N.W. 882; National Bank of Commerce v. Chicago B. & N. R. Co., 44 Minn. 224, 46 N.W. 342, 9 L.R.A. 263.

■ It next becomes necessary to examine the laws pertaining to market agencies of Iowa, the state in which the plaintiffs delivered the cattle to Brackey and of Minnesota, the state in which the defendant sold them as a market agency for Brackey. The laws of these two states in relation to market agencies are substantially identical and have had careful consideration by the Supreme Court of both states. These courts have followed the "general rule" holding a market agency liable to the true owner for conversion where it receives from its principal livestock to which its principal has no right, title, or interest, and does not account to the true owner for the livestock or its proceeds. Generally, the market agency's good faith and ignorance of the true ownership are not a defense. It is a defense that the market agency was misled by the owner. The rule is stated more elaborately in 35 C.J.S., Factors, § 57, page 465. A concise statement is given in 22 Am.Jur. 333, Sec. 48 as follows:

"As a general rule, a factor or commission merchant who receives property from his principal, sells it under the latter's instructions, and pays him the proceeds of the sale is guilty of a conversion if his principal had no title thereto or right to sell the property; and the factor may not escape liability to the true owner for the value of the property by claiming that he acted in good faith and in ignorance of his principal's want of title. * * *"

In Iowa the rule is established by Birmingham v. Rice Bros., 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108; Crescent Chevrolet Co. v. Lewis et al., 230 Iowa 1074, 300 N.W. 260; Mulroney Mfg. Co. v. Weeks et al., 185 Iowa 714, 171 N.W. 36; Gray Bros. v. Otto, 178 Iowa 854, 160 N.W. 293.

In Minnesota the rule is equally well settled by Mason City Production Credit Ass'n v. Sig Ellingson & Co., 205 Minn. 537, 286 N.W. 713; Gustafson v. Equitable Loan Ass'n, 186 Minn. 236, 243 N.W. 106; Johnson v. Martin, 87 Minn. 370, 92 N.W. 221, 59 L.R.A. 733; National Bank of Commerce v. Chicago B. & N. R. Co., 44 Minn. 224, 46 N.W. 342, 9 L.R.A. 263.

A minority rule is in effect in Kentucky, Tennessee, Oklahoma, Kansas, Nebraska, Montana, and has been invoked by some courts in a few other states. In jurisdictions where the minority rule has been applied the decisions generally are based on estoppel, or on the principle that where one of two innocent persons must suffer through the wrongful act of a third person, the loss should fall on the one who made it possible for the wrong to be committed.

Unquestionably the general rule is supported by the weight of authority and is the settled law in most jurisdictions. Birmingham v. Rice Bros., supra, and Mason Production Credit Ass'n v. Sig Ellingson & Co., supra, are leading cases and leave little room for controversy as to the law in the states of Iowa and Minnesota. As we have seen, this court has no jurisdiction to reverse or modify these decisions. This might well end the discussion except for further questions vigorously presented on behalf of the defendant.

The defendant has stressed the decision in Sullivan Co. v. Wells, D.C., 89 F.Supp. 317. The court in that case followed the Supreme Court of Nebraska in the case of Sullivan Co. v. Larson, 149 Neb. 97, 30 N.W.2d 460. Moreover, the owner of the cattle involved in the Wells case delivered to the buyer a written shipping order that the court thought conferred on the buyer an indicia of ownership which, together with the possession of the cattle, justified the selling agency in a conclusion that the owner had assented to a transfer of title to the fraudulent buyer. It should be remembered that no indicia of ownership was submitted to the defendant in the case now under consideration.

The same specious argument was made in Sullivan Co. v. Wells that has been urged in many cases and that was vigorously presented to the court by able counsel in the case at bar to the effect that a market agency is entitled to some special dispensation of the general rules of law because of the duties imposed by the Packers and Stockyards Act.

It is strongly urged on behalf of the defendant that it is a federal public utility, licensed by the federal government to act as such and required to conduct its business in accordance with the federal law, that the question of its liability should be determined by the federal law and not by the laws of the state of Iowa or of Minnesota. In other words, that Congress in the Packers and Stockyards Act prescribed the rules of law relating to the marketing of livestock and required commission merchants acting thereunder to register as a market agency; furthermore, that such agency must for a fixed commission sell any shipment consigned to it for sale and account to the consignor for the proceeds irrespective of the consignor's title or interest in the consignment. In short, defendant contends that since it is not at liberty to select its customers or its principals for whom it sells, it is unreasonable to hold it liable in conversion where, as a mere agent, it is required by law to make a sale irrespective of the character of its principal's title. It is true that a commission merchant as a market agency un-

der the act must conform, not only to the Act itself, but also to other lawful rules and regulations promulgated by the Secretary of Agriculture. United States v. American Livestock Commission Company, 279 U.S. 435, 49 S.Ct. 425, 73 L.Ed. 787; Tagg Bros. & Moorhead v. U. S., 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524.

The Packers and Stockyards Act, 7 U.S.C.A. § 208 provides: "It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services, and every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful. Aug. 15, 1921, c. 64, § 307, 42 Stat. 165."

■ It is true that the act provides that "every unjust, unreasonable, or discriminatory regulation or practice is prohibited and declared to be unlawful." This does not mean that the defendant was required to furnish services under any and all circumstances to all comers. The provision does not mean that the defendant was under any duty to render services to Brackey who had obtained the cattle by giving a worthless check and was therefore guilty of fraud, under the statutes of Iowa, a felony. As a market agency it was not required to become a *particeps criminis* by selling livestock obtained by a speculator in a fraudulent transaction. In Carnes v. St. Paul Union Stockyards, 175 Minn. 294, 221 N.W. 20, 21, the court in part said "The defendant's stockyards are devoted to a public use. State v. Rogers [& Rogers], 149 Minn. 151, 182 N.W. 1005; Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229. Still such institutions may, without incurring liability, deny the use of their facilities to dishonest dealers and so protect the general public. Dishonest traders should not be permitted to do business in the yards. The plaintiff claims that under the Packers and Stockyards Act of 1921, all control is with the federal authorities. In Carnes v. St. Paul Union Stockyards Co., 164 Minn. 457, 205 N.W. 630, 206 N.W. 396, we held that the district court had competent jurisdiction to sustain the au-

thority of the defendant in excluding those engaged in dishonest practices."

■ The Packers and Stockyards Act was passed for the purpose of eliminating evils that had developed in marketing livestock in the public stockyards of the nation; furthermore, to control prices to prevent monopoly and to eliminate unfair, discriminatory and deceptive practices in the meat industry; and furthermore to regulate rates for services rendered in connection with livestock sales. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735.

Obviously Congress had no intention of regulating the entire business of the livestock and meat industry. Certainly there is no indication in the history of the legislation, in the Act itself or the interpretation of it by the courts that justifies the conclusion that the Act was designed to supersede local laws pertaining to the well established principles of agency, sales of personal property, chattel mortgages and many other branches of the law.

■ The position of the defendant is compared with that of such public utilities as the railroads and warehouses. It should be observed that a railroad is not required to receive and transport property where the transportation thereof is illegal, property of a thief, property not properly packed and that it may refuse to transport persons who will not comply with reasonable regulations or who are likely to interfere with the sale and convenient conduct of its business. 13 C.J.S., Carriers, § 254, p. 538. A similar statement safely may be made relative to warehousemen, pipe lines and other public utilities. Notwithstanding what has been said public utilities are not required to serve all comers. Commission merchants licensed under the Packers and Stockyards Act to serve as market agencies are required by the law and the rules and regulations of the Secretary of Agriculture to make sales of livestock at specified rates and to account to consignors for the proceeds, but they are not required to serve, as a principal, a thief or one who has obtained possession of livestock by misrepresentation, fraud, deceit or other illegal means. Certainly it is

not wrongful discrimination to refuse to aid a criminal in perpetrating a crime. The act merely requires market agencies to furnish services on reasonable request without discrimination. In other words, the conduct prohibited always is unjust discrimination, unfair rates or practices, and unreasonable rules.

 In adopting legal principles the court must ever bear in mind the result of their application in practice. To relieve a market agency of liability in tort for a wrongful conversion would open the door to fraud, and pave the way for irresponsible speculators to go about the country searching out unsuspecting subjects for their fraudulent operations. The place to prevent such conduct is in the central market where agencies are authorized under the law to engage in the business of selling livestock. The public welfare, including that of livestock producers, must have equal consideration with that of those who are engaged in conducting market agencies. Moreover, a market agency can protect itself by requiring consignors of livestock to furnish indicia of title, or a bond, or insurance against loss. Birmingham v. Rice Bros., supra.

Defendant contends that the plaintiffs are estopped to recover in an action for conversion. The essential elements of estoppel are: (1) Ignorance of the facts of the party claiming estoppel; (2) misrepresentation or silence concerning the matter where it was a duty to speak amounting to misrepresentation or concealment of a material fact; (3) action by the party relying on the misrepresentation or concealment; and (4) damages resulting if the estoppel is denied. Nelson v. Chicago Mill & Lumber Corp., 8 Cir., 76 F.2d 17.

The plaintiffs made no misrepresentations to the defendant. There was no intent on the part of the plaintiffs to defraud or deceive anyone in the transaction. They merely delivered possession of the livestock to a purchaser at their auction sale. They had no contact with the defendant at any time. The defendant did not rely on anything the plaintiffs said or did. The theory of estoppel is not applicable under the facts of this case. Moreover, the Supreme Court of Minnesota in Moberg v. Commercial Credit Corp. et al., 230 Minn. 469, 42 N.W.2d 54, 58, held: "In order that the real owner of personal property may be estopped from asserting his title against a person who has dealt with one in possession in faith of his apparent ownership, it is the general rule that something more than mere possession and control is necessary. The authorities indicate that possession must be accompanied by indicia of title. Greene v. Dockendorf, 13 Minn. 70, (Gil. 66); Warder, Bushnell & Glessner Co. v. Rublee, 42 Minn. 23, 43 N.W. 569; Hedderly v. Backus, 53 Minn. 27, 55 N.W. 116; Baker v. Taylor, 54 Minn. 71, 55 N.W. 823; Bjork v. Bean, 56 Minn. 244, 57 N.W. 657; Freeman v. Kraemer, 63 Minn. 242, 65 N.W. 455; Kiewel v. Tanner, 105 Minn. 50, 117 N.W. 231, 25 L.R.A.,N.S., 772; Norris v. Boston Music Co., 129 Minn. 198, 151 N.W. 971, L.R.A.1917B, 615; Tousley v. First Nat. Bank, 155 Minn. 162, 193 N.W. 38; Cardozo v. Fawcett, 158 Minn. 57, 196 N.W. 809; Hayes v. Midland Credit Co., 173 Minn. 554, 218 N.W. 106; Loring v. Swanson, 180 Minn. 104, 230 N.W. 277."

Findings of fact, conclusions of law and an order for judgment will be entered in accordance with this opinion.