H. H. BABCOCK COMPANY v. W. H. WILLIAMS.

December 27, 1898.

Nos. 11,424—(195).

**Unrecorded Contract Construed as Conditional Sale—Invalid as to Creditors of Vendees.**

While the written contract in question purports to be a consignment of goods to defendant's assignors for sale as the agents of plaintiff, yet it appears on its face that its real purpose is to cover up a conditional sale; that it was made in such form in order that plaintiff might give said assignors a false credit, by keeping the contract off record, and still be

protected. As to the assignors' creditors, it must be regarded as a conditional sale; and, as it was never filed of record, the condition is void as to them.

Action in replevin in the district court for Ramsey county against the assignee of Crisham & Winch to recover possession of four vehicles or, in lieu thereof, the sum of $905. The cause was tried before O. B. Lewis, J., and a jury. A verdict was directed in favor of plaintiff for two of the vehicles, and for a return to defendant of the other two. The verdict was set aside, and judgment was entered in favor of the plaintiff as the owner and entitled to the possession of all the vehicles. Defendant appealed. Reversed.

*Bishop H. Schriber,* for appellant.

*J. F. Hilscher,* for respondent.

The assignee cannot assert a greater claim or title to the goods than that held by the insolvents. Head v. Miller, 45 Minn. 446. A conditional sale is a sale in which the transfer of title to the thing sold to the purchaser is made to depend upon the performance of some condition. 6 Am. & Eng. Enc. 437; Newmark, Sales, § 19. Where one party was to take goods from another, sell them and return monthly the amount of sales at the price charged by the latter, who was to furnish the former with all goods in his line, as in this case, the transaction imports a consignment of goods for sale and not a sale of them. Walker v. Butterick, 105 Mass. 237; Williams v. Davis, 47 Iowa, 363; Berry v. Allen, 59 Ill. App. 149; Blood v. Palmer, 11 Me. 414; First v. Schween, 127 Ill. 573; Middleton v. Stone, 111 Pa. St. 589; Eldridge v. Benson, 7 Cush. 483. See also National v. Sims, 44 Neb. 148; Lenz v. Harrison, 148 Ill. 598. Such a consignment contract is not within the provisions of G. S. 1894, § 4148, which requires certain contracts to be filed. See Cortland Wagon Co. v. Sharvy, 52 Minn. 216; Dewes v. Merritt, 82 Mich. 198. The mere fact that the bailee agrees to pay a certain sum if the goods are not returned, does not itself change the transaction into a sale. Brown v. Hitchcock, 28 Vt. 452; Westcott v. Thompson, 18 N. Y. 363. See also National v. Goodyear, 90 Ga. 711; Dean v. Lombard, 61 Ill. App. 94; Dewes v. Merritt, supra.

CANTY, J.

The plaintiff delivered a number of carriages and buggies to Crisham & Winch under the contract hereinafter mentioned. They sold several of the articles so delivered, and thereafter made an assignment for the benefit of their creditors, under the insolvency law of this state. At the time of making the assignment they had in their custody several of the carriages and buggies remaining unsold, which they turned over to their assignee. This is an action in replevin for the possession of the same, brought against the assignee.

The theory of the plaintiff is that the goods were merely delivered to Crisham & Winch to sell the same as the agents of plaintiff. The theory of defendant is that the goods were sold to Crisham & Winch under a contract of conditional sale, and that as the contract was not filed as provided by G. S. 1894, §§ 4148-4150, the condition is void as against their creditors.

At the close of the evidence each party moved the court to order a verdict in his favor, and thereupon the court ordered a verdict for plaintiff for all of the vehicles in question, except two, and ordered a verdict for defendant for these two, as to which it was claimed that the original contract had been modified.

Thereafter, in a motion for a new trial, plaintiff moved, under Laws 1895, c. 320, for judgment notwithstanding the verdict, which was granted, and defendant appeals.

The original contract consists of two parts. Crisham & Winch signed an order, directed to plaintiff, which, so far as here material, reads as follows:

"Please ship to us, via R. R. on or before soon as possible, or as soon thereafter as practicable, the following goods, hereinafter described, which we hereby agree to receive and pay for at prices named below; also, to pay all freight or express charges on same, and settle for according to terms given.

"Terms, as per contract on back of this order, —— per cent. for cash within —— days from date of shipment.

"Failing to make settlement promptly according to above terms, the whole amount for goods shipped by you to become due at once, and payable in cash upon demand, without discount.

"All repairs or parts of vehicles, the terms upon same are 'net cash.' [Then follows description of property, and price to Crisham & Winch of each article.]

"When orders for special jobs are given, such orders cannot be canceled after the job has commenced. * * * No understanding or agreement with salesmen will be recognized, unless stated in this order. This order will be filled as near date stated as possible, and will be understood to hold good until goods are shipped, and not subject to countermand. Our responsibility ceases when we take the bill of lading as per your instructions. Your recourse for losses, damages and delays in delivery is upon the carrier. We do not guaranty rates of freight, unless so specified in order, but will always get the cheapest we can on day of shipment. All orders taken subject to the approval of H. H. Babcock Company, and all claims for damages must be made within five days after receipt of goods. Title to the goods shipped on this order is to remain in H. H. Babcock Company until paid for in money, and should anything occur to affect my commercial standing, or should I become insolvent, any amount still unpaid, either in account or in note or notes, shall immediately become due, and it is agreed and understood that H. H. Babcock Company shall have the right to take possession of the goods. * * * After acceptance of order, H. H. Babcock Company agree to ship all goods they may be able to supply, but are not to be held liable for damages for orders not filled."

On the reverse side of the paper on which the above is found, Crisham & Winch signed the other part of the contract, which, so far as here material, reads as follows:

"Referring to the order given you for goods as listed on the other side of this agreement, we would say that we propose to handle your work exclusively for what vehicles we may require of yours, or similar grade, during the year 1897. We will receive, pay freight, and carefully store all goods that you send us upon our order, and be responsible for any and all damages that may occur to them. Said work so furnished is to be held as a consignment. We will remit to you cash on the first of each mo. for all goods sold previous mo., less 3 per cent., or 4 mos. note; holding such cash, less our commission, in a fiduciary capacity until remitted. We also send you a written statement at the end of each month of all goods remaining unsold.

"All goods on hand December 1st, 1897, that are unsold or unsettled for, we (Crisham & Winch) will purchase and pay you (H. H. Babcock Co.) for in cash at that date, less 3 per cent., or 5 mos. note (i. e. December 1st, or any time thereafter you may designate), at the invoice price, if you request us to do so; it being understood that you (H. H. Babcock Co.) have the entire option of requiring us to purchase them at that date, or later, either in whole or in part, as you may elect. The intent and meaning of this provision is that we leave with you a proposition to purchase the goods of you (H. H.

Babcock Co.) for cash, less 3 per cent., or 5 mos. note, December 1st, 1897, or at any date following you (H. H. Babcock Co.) may elect, at the price stated, which you can accept or reject as you may choose. In case there are any goods not so purchased and paid for on or after December 1st, 1897, we will, if you say so, at any date after December 1st you may name, carefully crate them and place aboard cars, and ship them where you may direct, all without any refunds to us or charge to you whatsoever.

"Our compensation for the foregoing shall be the difference between your prices to us and what we receive in excess for the goods. In case of financial distress on our part, we agree to deliver the goods to you, as hereinbefore provided for (paragraph 2nd), at any other date than that above named as you may designate. If we delay longer than 30 days in paying for all work sold as above agreed, or fail to make report monthly, as provided for above, then this agency is to cease, and any and all goods remaining unsold are to be subject to the order of the H. H. Babcock Co., if they choose, free of any and all refunds to us and charges to them whatsoever. Any work damaged by neglect or usage to be paid for the same as if sold.

"We also agree to insure the goods at our own expense, at full value as represented by invoices, in good, solvent insurance companies, as soon as received by us; said insurance to be made payable to the H. H. Babcock Co. as their interest may appear; policy or policies to be forwarded to said H. H. Babcock Co., at Watertown, N. Y."

It is immaterial what the parties pretended to call this contract. In determining its nature we must look to its substance, and not its form. If it is sufficiently plain that the parties have used words to conceal their thoughts and intentions, we have a right to look beyond such words; and, if their real intent appears on the face of the contract, it will control. In ascertaining this intent, we must look to all of the different provisions of the contract, and see whether there are sufficient earmarks in it to show that the parties really intended the transaction as a conditional sale, but that in order that plaintiff might give Crisham & Winch a false credit by keeping the contract off record, and still be protected, the parties inserted certain provisions by which they pretended to make a contract by which the goods were to be consigned to Crisham & Winch to sell as plaintiff's agents.

It is our opinion that, at least as between plaintiff and the creditors of Crisham & Winch, the contract is one of conditional sale.

It provides that the title to the property shall remain in plaintiff until the goods are paid for in money, and that, if Crisham & Winch shall become insolvent, any amount still unpaid, either in note or notes, shall immediately become due, and plaintiff may retake the goods. It further provides that, if Crisham & Winch fail to make settlement promptly, the whole amount for goods shipped shall become due at once, and be payable in cash upon demand. It also provides that Crisham & Winch shall remit each month for all goods sold the previous month "less 3 per cent., or 4 mos. note; holding such cash, less our commission, in a fiduciary capacity."

For what purpose were they to give their note, if they held the cash in a fiduciary capacity? If they were to hold the cash for goods sold as mere bailees, and could not use it for their own purposes, why should they hold it at all for the four months for which they were to give the note? The contract nowhere states the price, or the minimum price, for which they were to sell the goods. It merely states the price to them. They were, at the election of plaintiff, to purchase all goods remaining unsold December 1, 1897, and pay for them in cash or by five months' note, or at such later date as plaintiff might elect.

There are many other minor circumstances which tend to show that it is a contract of conditional sale,—at least, as between plaintiff and the creditors of Crisham & Winch. Whatever the form of the agreement in such a case, if the purpose is to cover up a sale or a conditional sale, and preserve in the vendor a lien or right to retake the property, the right so preserved is void as against the creditors of the purchaser, unless the contract is placed of record. See Thompson v. Paret, 94 Pa. St. 275; Peek v. Heim, 127 Pa. St. 500, 17 Atl. 984; Heryford v. Davis, 102 U. S. 235.

It is not necessary to consider the modification of the original contract, under which it is claimed that defendant is entitled at least to the two vehicles for which the judge ordered a verdict for defendant, as this modification is, if anything, more favorable to the defendant than the original contract. This disposes of the case.

The judgment appealed from is reversed.