In the Matter of SOUTH VIEW COUN-
TRY CLUB OF MANKATO, INC.,
Bankrupt.

No. 2-62-693.

United States District Court
D. Minnesota,
Second Division.

Oct. 7, 1963.

David L. Graven, Albert Lea, Minn., for petitioner.

Paul R. Lamm, Mankato, Minn., for trustee.

LARSON, District Judge.

Petitioner Meyer & Sons, Inc., petitions for review by this Court of an Order of the Referee in Bankruptcy. The Referee concluded that certain air conditioning equipment was an asset of the bankrupt estate and was subject to sale by the Trustee free and clear of any claim of ownership by Meyer & Sons, Inc. The equipment was installed on the premises of the bankrupt pursuant to an "Air Conditioning Lease Agreement" (hereinafter referred to as the agreement). The Trustee claimed the equipment under § 70, sub. a, of the Bankruptcy Act (11 U.S.C.A. § 110, sub. a

(5)).[1] He argues that the agreement was in effect a conditional sales agreement and since it was not filed in the office of the Register of Deeds for the County in which the property was located pursuant to M.S.A. §§ 511.18 and 511.20, the title to the equipment was vested in him. In the hearing before the Referee the Trustee also argued that the equipment was a fixture, but this point was decided adversely to him by the Referee and he does not press it here. Meyer & Sons, Inc., installed the equipment and claims that it retained title to it under the agreement. It argues that the agreement was either a "rental bailment agreement" or a lease. In either case Meyer & Sons would be able to retake the equipment since it could not be levied on by the hypothetical judgment creditor of § 70, sub. a of the Bankruptcy Act. See Bolton-Swanby Co. v. Owens, 201 Minn. 162, 275 N.W. 855 (1937). The Referee held that the agreement was a conditional sales contract as well as a lease, and that the title to the equipment, therefore, was in the Trustee.

The question before this Court is whether the Referee was correct in his decision that the agreement was a conditional sales agreement in addition to a lease or bailment.

The problem of whether a document is, in effect, a conditional sale or a lease has been a troublesome one in bankruptcy law. As a general rule the distinction is that a contract of sale creates an obligation to pay the agreed price, while the lease does not impose such an obligation. See 4 Collier, Bankruptcy, § 70.18[13] (14th Ed. 1962).

We must look to Minnesota law for the answer to the problem. Ibid. at p. 1106. There is no Uniform Conditional Sales Law in Minnesota, and the

<hr />

1. "The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding * * * to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *." The involuntary petition in bankruptcy of the South View Country Club was filed on September 13, 1962.

courts here look through a document to its substance in order to determine whether the parties intended a sale, on the one hand, or a lease or bailment on the other. H. H. Babcock Co. v. Williams, 75 Minn. 147, 77 N.W. 791, 792 (1898). A conditional sale is characterized by title remaining in the seller until the buyer has paid the agreed price. At that point the buyer is either automatically the owner of the subject of the agreement or has the option of becoming the owner. See Reese v. Evans, 187 Minn. 568, 246 N.W. 250, 252 (1932); Uniform Conditional Sales Act § 1.[2] On default the seller can retake the subject and retain payments already received. The buyer's ownership interests include the responsibility of paying whatever taxes are due on the subject. State v. J. I. Case Co., 189 Minn. 180, 248 N.W. 726 (1933).

A conditional sale contemplates the transfer of title to the subject upon the performance of certain conditions. A lease contemplates the return of the subject after a period of use. The Minnesota Court has said:

> "It seems obvious that the buyer's interest was greater than that of a lessee. *The very fact that the buyer could acquire title upon final payment irrespective of the will of the seller indicates that a sale was intended.*" National Cash Register Co. v. Ness, 204 Minn. 148, 282 N.W. 827, 831 (1938). (Emphasis added).

The Court has taken much the same position with reference to bailments:

> "A sale contemplates that, at some time, the title shall pass to the vendee, and that, at some time and in some manner, he shall pay the purchase price. A bailment contemplates that the title shall not pass to the bailee but remain in the bailor, and that the property shall be returned to the bailor, or be disposed of as he shall direct." Norris v.

Boston Music Co., 129 Minn. 198, 151 N.W. 971, 972, L.R.A.1917B, 615 (1915).

An agreement, then, whereby possession of goods or equipment is transferred with the transferor retaining title and the transferee bound to make payments at the culmination of which he becomes, or has the option to become, the owner would generally be considered a conditional sale. M.S.A. § 511.19 provides that " * * * a conditional sale contract includes all agreements where possession of personal property under either an agreement where title is reserved until the purchase price is paid or where personal property is rented under an agreement that when the entire rental is paid that title thereto shall be transferred." A court will not be diverted from inquiry into the legal effect of a document by lease-like or other language. Hughes v. Becker, supra, note 2.

The precise question which this Court must decide was faced by the Minnesota Supreme Court in Motor Power Equipment Co. v. Park Transfer Co., 188 Minn. 370, 247 N.W. 244 (1933). There an agreement denominated a lease was held to be a conditional sales contract. The agreement involved the sale or lease of a piece of heavy machinery and provided that the purchaser was to pay what was designated as a monthly rental of $500 per month for twelve months and $360 on the thirteenth month,

> "thus agreeing to pay what was stated in the so-called lease to be the value of the shovel. It was provided in the so-called lease that Letwinik [the purchaser/lessee] should keep the shovel free of all liens, taxes, and incumbrances, and should not remove it from the county or state of his residence or transfer any interest therein or make any material change in the chassis, body, or equipment without the plaintiff's written consent, and that he should carry insurance not exceeding the value

2. Though this Act has not been adopted in Minnesota, it provides an authoritative source for definitions. It has been cited for this purpose by the Minnesota Supreme Court in Hughes v. Becker, 260 Minn. 83, 108 N.W.2d 781, 783 (1961).

of the property at the time of the loss as the value was defined in the contract. Conditions were described therein which would result in the right on the part of the plaintiff to repossess the shovel. Perhaps the most significant provision was an agreement that in case of loss or destruction either total or partial Letwinik agreed to pay to the plaintiff the value of the property at the time of the loss or destruction, the value to be determined as follows: 'From the value of said property at the time of delivery of same to the lessee as set forth above shall be deducted the total of rental payments theretofore made and the sum thereby arrived at shall be the value.'

"This provision is also the one referred to in connection with the insurance. The last paragraph of the contract provided: 'It is also understood and agreed that the rental payments may be applied on the purchase price of the shovel if the lessee elects to purchase it.' " [188 Minn. at pp. 371–72; 247 N.W. at p. 244].

The other Minnesota case in point is Hughes v. Becker, supra, note 2, where the Court said:

"It is, however, essential to a conditional sales contract that there be an obligation on the part of the buyer to pay the stated price, whether it be called 'rent' or something else. In Motor Power Equipment Co. v. Park Transfer Co., 188 Minn. 370, 373, 247 N.W. 244, 245, we said:

" 'One of the principal tests applied by the court to such contracts is whether or not the buyer or the lessee is obligated at all events to pay the total purchase price of the subject of the contract.'

"Here the plaintiff's testimony tends to show that Becker could have terminated the transaction at any time by returning the truck. The fact that the payments were contingent upon earnings being realized from the truck also indicates that there was no absolute liability on Becker's part to ultimately pay the $1,700. While there is some evidence to the contrary, we believe that when it is considered as a whole, it was sufficiently conflicting to create an issue of fact for the jury."

The instant agreement provides that title to the equipment remains in Meyer & Sons for the duration of the agreement. At the end of five years, the bankrupt could obtain title to the equipment by paying one dollar to Meyer & Sons. The bankrupt was obligated to make sixty payments, the first twenty-four were to be $90.00 each, and the last thirty-six $60.00 each. Upon failure to make a payment Meyer & Sons had the right to terminate the agreement and repossess the equipment. In case of default the bankrupt would be liable to Meyer & Sons for an amount equal to the payments due for the remainder of the period discounted to present value. The bankrupt could purchase the equipment at any time for an initial cash purchase figure, and eighty per cent of the payments made could be applied to such a purchase. The bankrupt was responsible for all personal property or real estate taxes on the equipment, and had to keep at least $3,000 of insurance on the equipment.

■ The agreement just described falls within the confines of a conditional sale and we affirm the decision to that effect of the Referee. That a condition for passage of title at the end of the period is the payment of one dollar does not alter this. If anything, it reinforces our conclusion that the agreement is in fact a sale. To allow the payment of a nominal sum to transform a document bearing such a heavy imprint of conditional sale into a lease would be a classic example of elevating form over substance. The Eighth Circuit Court of Appeals said in a similar situation:

"The final payment, which is nominally the purchase price, is so small in comparison with the entire purchase price as to leave no real choice

to the 'lessee.' The obvious purpose was to dispose of the machine under such conditions that when the 'lessee' had paid the 'rental' he could not afford to fail the relatively small final payment to obtain it. This would have been the obvious and natural, if not the inevitable, result." Burroughs Adding Mach. Co. v. Bogdon, 9 F.2d 54, 56 (8th Cir. 1925).

The total payments due under the agreement are $5,320 while the stated purchase price is $3,150. However, as the Referee points out, an agreement of this nature is consistent with a conditional sales contract in which the total of payments exceeds the cash price because of the accumulated interest on deferred payments extending over five years. If the difference is thought to be excessive, it should be remembered that the bankrupt had also purchased what was, in effect, a five year service contract from Meyer & Sons. The significant thing about the payment total is that it exceeds the cash price of the equipment. Compare Western Material Co. v. Deltener, 64 S.D. 62, 264 N.W. 207 (1935) (agreement held lease rather than conditional sale because "rent" less than value of equipment).

The requirement that the bankrupt keep at least $3,000 insurance on the equipment is more consistent with a conditional sales contract than with a lease. A mere lessee would probably not have an adequate insurable interest, but it is clear that a conditional vendee has such an interest. 4 Appleman, Insurance Law and Practice § 2183 (1941). Destruction at any time after the second payment was made would result in Meyer & Sons recovering the cash purchase price if the bankrupt could not continue to make payments. The payment total, the transfer

of title at the end of the period upon the payment of one dollar, and the insurance provision all underscore the sale aspect of the agreement.

Meyer & Sons argue that "it is obvious that the parties could have entered into a sales agreement. * * * Because of financial or other reasons, perhaps tax, the parties did not see fit to enter into a sales contract for that price." With all respect to the forthright and well-argued brief of Meyer & Sons, the reasons why the parties decided to cast their agreement in terms of lease are irrelevant here; the nature of their real agreement is relevant.[3] The bankrupt itself might be estopped from arguing that the legal effect of the agreement was a sale, but the Trustee is not so estopped.

The point Meyer & Sons most strongly urges and the one which it considers controlling is that under certain circumstances the bankrupt would be relieved of the obligation to complete paying for the equipment. It is argued that the amount to be paid in the event of loss or destruction is not set forth in the agreement and that, therefore, the amount would be the fair market value of the equipment at the time of the loss. Since the Motor Power Equipment case says that a principal test of whether an instrument is a lease or a conditional sale is whether the buyer or lessee is obligated "at all events" (language quoted in Hughes Case, supra) to pay the purchase price, the instant agreement, it is argued, is not a conditional sales contract as a matter of Minnesota law.

The agreement contains a comprehensive default clause.[4] Meyer & Sons con-

---

3. See 1 Williston, Sales § 36 (2nd ed. 1924):
"Sellers desirous of making conditional sales of their goods, but who do not wish openly to make a bargain in that form, for one reason or another, have frequently resorted to the device of making contracts in the form of leases either with options to the buyer to purchase for a small consideration at the end of the term, pro-

vided the so-called rent has been duly paid, or with stipulations that if the rent throughout the term is paid, title shall thereupon vest in the lessee."

4. Paragraph 9 of the Agreement.
"Default. If Lessee fails to pay any installment of rent within sixty days after it becomes due, or fails to perform all of the covenants or conditions on its part

tends that this clause would not apply in case the equipment is destroyed because of paragraph 7 of the agreement, which provides:

> "7. Liability. Lessee shall indemnify and save Meyer and Sons, Inc., harmless from any and all injury to or loss of leased equipment from whatever cause, except negligent or improper service by Meyer & Sons, Inc."

It attempts to cap its position by arguing that to hold otherwise would mean that the bankrupt would be liable to Meyer & Sons for the purchase price even if Meyer & Sons negligently destroyed the equipment.

The default clause is called into operation "if the Lessee fails to pay any installment of rent within sixty days after it becomes due * * *" Meyer & Sons points out that the clause does not mention destruction of the equipment. It would seem more relevant that the clause does not *exclude* such an event. That the clause makes no mention of destruction would be no reason to say that destruction is excluded and that, therefore, the agreement, replete with sale-like provisions, is not a conditional sales contract.

Paragraph 7 does not alter this conclusion. It is consistent with a conditional sales contract because the risk of loss in such an arrangement is on the buyer. 5 Williston, Contracts § 735 (3rd ed. 1961). The effect of the clause excepting "negligent or improper service by Meyer & Sons, Inc." from its coverage is not necessarily inconsistent with a condition-

al sales contract. We need not decide here what the effect of this provision is. A possible explanation is that it serves as a limitation on the risk of loss which would otherwise be on the bankrupt. The constant contact that Meyer & Sons had with the equipment because of its servicing obligation could well have motivated the parties to make clear that in the event that Meyer & Sons negligently destroyed the equipment, the bankrupt would be relieved of the obligation in order to prevent litigation should this question arise.

The "all events" language of the Motor Power Equipment Co. case, upon which Meyer & Sons relies so heavily, would not preclude such a result. It is unreasonable to assume that the Minnesota Supreme Court intended to lay down a rigid rule which would make it impossible for parties to tailor the conditional sales form to their own varied problems. It is not even clear that the "all events" language contemplated destruction of the subject of the agreement; it is more likely that the Court was referring to whether or not the "conditional buyer-lessee" could terminate the agreement by return of the property. This was the application of the language made by the Minnesota court in Hughes v. Becker, supra. See Annotation, 175 A.L.R. 1368, 1384 (1948):

> "[O]ne of the principal tests applied to [sic] the courts to determine whether the contract is one of conditional sale or a lease is whether or not the party is obligated at all events to pay the total purchase price of the subject of the contract.

---

to be performed, or if a bankruptcy or insolvency proceeding is filed by or against Lessee or a received [sic] is appointed for Lessee's property, or if Lessee makes an assignment for the benefit of creditors, or if any legal process is issued against Lessee or its property, whereby the leased equipment are attempted to be taken, in addition to all of its other rights, Meyer & Sons, Inc., shall have the right to terminate this lease, without notice, and take immediate possession of and remove from premises of Lessee the leased equipment. In any such event, and in addi-

tion to any unpaid rent accrued to the date of termination, Lessee shall remain liable for and shall promptly pay to Meyer & Sons, Inc., for liquidated and stipulated damages an amount equal to the rent reserved hereunder for the unexpired portion of the term, discounted at the rate of four percent (4%) per annum to present worth, together with all expenses Meyer & Sons, Inc., may reasonably incur in connection with retaking of possession of leased equipment and collecting the sums due hereunder."

If return of the property is either required or permitted the instrument will be held to be a lease; while, on the other hand if the so-called lessee is obligated to pay the purchase price, even though such price is designated as rental or hire, the contract will be held to be one of sale."

The Findings of Fact, Conclusions of Law and Order of the Referee are affirmed.