Walter D. SANDERS, Trustee in Bankruptcy for the Atlanta Times, Inc., Bankrupt, Appellant,

v.

COMMERCIAL CREDIT CORPORATION, Appellee.

No. 24304.

United States Court of Appeals Fifth Circuit.

July 10, 1968.

Rehearing En Banc Denied Aug. 9, 1968.

B. D. Murphy, Frank T. Davis, Jr., Wayne Shortridge, Atlanta, Ga., for appellant.

Nolan B. Harmon, Newell Edenfield, Atlanta, Ga., for appellee.

Before COLEMAN and AINSWORTH, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge:

The principal issue here rather frequently recurs in bankruptcy proceedings and was the subject of this Court's opinion in Sanders v. National Acceptance Co., 383 F.2d 606 (5 Cir., 1967), involving the same bankrupt although a different creditor and a totally unrelated contract.

█ Do the particular transactions constitute a lease or a conditional sale? If a lease, then the chattel, or its monetary equivalent after sale, reverts to the lessor without the necessity of filing to protect its rights. If the agreement be deemed a security agreement (or conditional sale) the Trustee prevails in behalf of the bankrupt and its common creditors.

We affirm the Referee and the District Court's determination that the agreement here was a lease—and thus beyond the requirements for filing under the Uniform Commercial Code under Georgia law. Ga.Code § 109A–1–201(37).

To acquire the necessary equipment to publish a newspaper, The Atlanta Times, Inc., entered into a written contract with Commercial Credit Corporation which in pertinent portions provided that:

(1) The agreement " * * * is and is intended to be a lease, and Lessee does not hereby acquire any right, title or interest in and to the Chattels, except the right to use the same under the terms hereof."

(2) Upon expiration the TIMES agreed to return possession of the chattels to CCC or load them for shipping elsewhere as designated by CCC.

(3) The TIMES leased the equipment for 120 months at a specified monthly rental.

(4) This was a ten year agreement with a monthly rental of $5,940.61. Thereafter the TIMES had the option to continue to lease the equipment from year to year for an annual rental of $5,701.16.

(5) The TIMES was required to make a "Security Deposit" of $145,000 with CCC. This deposit was applicable at the option of CCC to the performance of the TIMES' obligation under the agreement.

The first two of these provisions of the agreement combine to give us a hornbook definition of a lease.

The appellant-Trustee for TIMES urges, however, that this is nothing more than a ploy to avoid the provisions of statutes requiring the filing of conditional sales contracts by: (1) phrasing the agreement in terms of a lease, (2) requiring fixed amounts for rentals for a fixed period but then (3) orally stipulating that on completion of the so-called rental payments, a bill of sale shall vest in the lessee for some nominal amount.

█ We agree with the Trustee that if the payments are designated as rent but are in reality payments toward the purchase price of the property the Court must pierce through the shell of words,

give force to the actual intention of the parties, and determine the contract in its true character to be a conditional sale.

The difficulty with the Trustee's case here, however, is, first, there is very little if anything in the written instrument itself which subjects it to suspicion as a masquerade, and, second, the Trustee's position is more battered than buttressed by the parol evidence which was considered by the Referee after considerable cautionary deference to the Trustee's insistence that the written contract was ambiguous or incomplete. The parol evidence itself showed that a lease was indeed intended by the parties for a number of reasons including the legitimate consideration of tax consequences flowing only from a genuine lease.

■ The testimony for the appellant did, in fact, contradict the clear written agreement by insistence that there was some kind of loose, ill-defined and unwritten agreement to the effect that the lessee would receive a bill of sale for some unspecified nominal amount upon completion of the rental payments. Such oral arrangement was categorically denied by oral testimony of CCC and the Referee was justified in determining from this entire record that the testimony of CCC was worthy of greater credence and in accord with the clear language of the written contract.

The Trustee also points to provisions of the written contract dealing with default which allow CCC to take possession of the property without notice, to hold the property free and clear of any rights of the TIMES under the agreement, to maintain the agreement in effect despite its possession of the property and its right to re-lease or sell all or some of the property. It is urged that all this adds up to the TIMES making an unconditional commitment to make a total payment of money which is called rent but which is in fact the same liability of a debtor which exists under a conditional sales contract, chattel mortgage or other similar contract under which a borrower unconditionally agrees to pay a lender a

sum certain and property is put up as security.

■ The Trustee relies upon In re South View Country Club, etc., 229 F. Supp. 105, 106(1) (D.C.Minn.1963), and 4 Collier on Bankruptcy, section 70.18 [13] (14th Ed., 1962), as authority for the valid general proposition that a contract of sale creates an obligation to pay the agreed price, while a lease does not impose such an obligation.

This contention of the Trustee, as has been noted by the Referee and approved by the District Court, " * * * overlooks the prime essential distinction between a lease and a conditional sale, to wit: in a lease the lessee never owns the property. In the absence of a right or option in the lessee to acquire ownership of the leased property, the transaction is one of lease."

It is on this central issue that appellant-Trustee fails. The written instrument in its extracted clauses and in its totality is consistent with the idea of lease, considered with or without the parol evidence.

■ Finally, with respect to the security deposit clause the appellant contends that this is in the nature of a penalty and as such is unenforceable in that the agreement does not provide for reduction of the sum of unpaid rentals under the lease to present value. We agree with the Referee and the District Court that these liquidated damages provisions are limited to the present value of unpaid rentals under the lease. See Irving Trust Co. v. A. W. Perry, Inc., 293 U.S. 307, 55 S.Ct. 150, 79 L.Ed. 379 (1934).

■ The District Court correctly recognized that since the leased property was purchased by CCC specifically for the use of the TIMES, reducing the likelihood of reletting such property, the default provision permitting the lessor the alternative of either reletting the property or selling it was reasonable. The sum of the price received at the court directed sale of the chattels plus the security deposit was still less than the present

value of the rent reserved at the time of default. Under such circumstances the District Court was correct in directing CCC to retain the security deposit and set it off against the damages incurred.

The judgment appealed from is

Affirmed.

## ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.