COMMERCIAL CREDIT EQUIPMENT
CORPORATION, Appellant,

v.

Virgil F. COLLEY and Imogene W.
Colley, Respondents.

No. 27323.

Missouri Court of Appeals,
Kansas City District.

Aug. 30, 1976.

Rehearing Denied Oct. 12, 1976.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Donald L. Mason, Sheridan, Sanders, Carr, White & Mason, Kansas City, for appellant.

Edward L. Simmons, Howard D. Lay, Donaldson & Lay, Kansas City, for respondents.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal by Commercial Credit Equipment Corporation from judgment on directed verdicts in favor of Virgil F. and Imogene W. Colley on CCEC's petition and on Counts I and II of the Colleys' counterclaim, and from judgment of $16,000 on jury verdict on Count III of the counterclaim. The question with respect to the directed verdicts is whether certain agreements for the use of farm equipment are leases as contended by CCEC, or conditional sales subject to Sections 428.100 and 428.110, RSMo [1], as contended by the Colleys and found by the court. The question with respect to the money judgment is whether the court erred in giving the instruction which submitted Count III of the counterclaim. Judgment on directed verdicts reversed; judgment on the counterclaim affirmed; cause remanded.

In Count I of its petition, CCEC alleged that on May 8, 1964, the Colleys "executed a certain document known as a Lease" by which they "agreed to lease * * * one Fox Forage Harvester * * * and one Fox Pickup Hay Unit and one Fox Corn Harvester for the stated consideration of $3,646.08 payable $303.84 at the execution * * *, balance to be paid in 33 equal monthly installments of $101.28," beginning June 15, 1964; that the Colleys breached the agreement and, as a result, CCEC sustained damage in sum $1,246.21, for which demand has been made, and for which judgment was prayed.

In Count II, CCEC alleged that on October 7, 1963, the Colleys "entered into a certain Lease agreement" by which they were "leasing * * * certain equipment" and were to pay "the aggregate sum of $23,494.80 payable $279.70 upon the execution * * * and a like sum for 83 months" beginning December 7, 1963; that the Colleys breached the lease, and, as a result, CCEC sustained damage in sum $11,931.50 for which judgment was prayed.

In Counts I and II of their answer and counterclaim, the Colleys alleged that "the lease (in each instance) is a two-party agreement * * * entered into * * * to evidence a conditional sale by means of a lease agreement" within the meaning of Sections 428.100–428.110 and, as a result, "because the plaintiff elected to repossess said property * * * plaintiff must refund seventy-five percent of payments made by defendants and is not entitled by law to any deficiency"; that in June, 1965, CCEC elected to declare default on the conditional sales and repossessed the property February 23, 1966. The Colleys prayed for the dismissal of Counts I and II of the petition and for judgment on their counterclaim for refund of (as amended to conform to the proof) $1012.80 on Count I and $4195 on Count II.

In Count III the Colleys alleged they were defrauded by CCEC through one James Woods and prayed for actual damages of $100,000 and punitive damages of $100,000.

Appellant contends the court erred in ruling the leases were subject to former Sections 428.100 and 428.110 and in the resulting directed verdicts.

Count II of CCEC's petition and Count II of Colleys' counterclaim involve CCEC Exhibit 8:

[See following illustrations]

---

1. Sections 428.100 and 428.110 were repealed effective July 1, 1965, by adoption of the Uniform Commercial Code; however, transactions entered into prior to July 1, 1965, remained subject to the prior law. § 400.10–101, V.A. M.S.

PLAINTIFF'S EXHIBIT *8*

FEB 13 *1967*

## Lease

*This Lease,* between Commercial Credit Equipment Corp , Lessor, herein called CCEC, a Delaware corporation with an

office at 300 St. Paul Place, Baltimore, Maryland and ...... *Virgil F. + Imogene W. Colley* ...... Lessee,

herein called User, of ... *900 Osage St.* ...... *Clintsbury* ... *Mo.*
(Street)                    (City)    (Zone)   (County)    (State)

**WITNESSETH:**

1. CCEC hereby leases to User, upon the terms and conditions herein contained, the following described property, hereinafter called Units.

### DESCRIPTION OF PROPERTY LEASED

| QUANTITY | MAKE & TYPE | MODEL | SERIAL NO. |
|---|---|---|---|
| 1 | SA 20×60 (Non-Dom.) HARVESTORE with Breathing System, Filler Pipe erected on foundation, all Complete | | |
| 1 | A.O. Smith Unloader (forage) | | |
| 1 | Blower + Blower Pipe System | | |

SERIAL No. B96-51-3861

### LOCATION OF PROPERTY LEASED

*Urney* ... *CLINTON* ... *MISSOURI*
(City)              (County)              (State)

*Route One (1)*
(Show complete street or rural route number also)

2. Lease Term; Rental.

2.1 The term of this Lease shall be *84* months commencing on the date of delivery of the Units to User. The Rentals shall be in the aggregate amount of: _ _ _ _ _ _ _ _ $ *23,494.80*

Rental Payments shall be made as follows:—

First Rental Payment herewith                    $ *279.70*

Subsequent Rental Payments as follows:

*83*
(No. of Rental Payments)

*E. O. V. A. 1* of $ *278.70*
(Equal, Quarterly, Semi-Annual, Annual)          (Amount)

beginning *November Dec. 7*, 196*3*
(Month)              (Day)

2.2 All Rental Payments to be paid by User to CCEC in advance of each Rental Period, subject to later refund or deficiency to the extent provided in Section 14.

2.3 All rentals shall be paid at the office of CCEC shown above, or such place as CCEC hereafter may designate from time to time.

3. Renewal or Extension. If User should not default in the performance of any of its obligations hereunder, User may, by thirty (30) days' written notice to CCEC prior to the expiration hereof, or any renewed or extended period, elect to renew or extend this Lease for successive twelve month periods, provided however, that User shall pay to CCEC for each such renewal an annual rental in advance equalling 2% of the aggregate rentals otherwise payable hereunder, and all the provisions of this Lease shall apply, except as otherwise specifically provided herein or in any subsequent agreement of the parties.

4. Warranties; Acceptance of Units by User. CCEC hereby assigns to User, for and during the lease term with respect to any Unit, any warranty of the manufacturer, expressed or implied, issued on each Unit, and hereby authorizes User to obtain the customary service furnished by the manufacturer in connection therewith, at User's expense. User acknowledges and agrees that each Unit is of a size, design, capacity and manufacture selected by User; User is satisfied that the same is suitable for its purposes; CCEC is not a manufacturer thereof nor a dealer in the distribution or sale thereof; CCEC has not made and does not make hereby, any independent representation with respect to the merchantability, condition or suitability of any Unit for the purposes of User, or any other representation of any kind with respect thereto. User agrees that CCEC shall not be liable to User for any loss, claim, demand, liability, cost, damage or expense of any kind caused, or alleged to be caused, directly or indirectly, by any Unit, or by any inadequacy thereof for any purpose, or by any defect therein, or the use or maintenance thereof, or any repairs, servicing or adjustments thereto, or any delay in providing, or failure to provide the same, or any interruption or loss of service or use thereof, or any loss of business, or any damage whatsoever and howsoever caused.

5. Location of Units. Units shall at all times be kept at the address of User shown above, and shall not be removed therefrom without the prior written consent of CCEC.

6. Use of Units.

6.1 User shall comply and cause all persons operating Units leased hereunder to comply with all applicable laws and regulations relating to the Units, and with all conditions of the policies of insurance on the Units, and, subject to Section 4, shall maintain the Units in good repair and operating condition, at User's expense.

6.2 User will not, without the prior written consent of CCEC, affix or install any accessories, equipment, or device on any Unit leased hereunder, if such addition will impair the originally intended function or use of such Unit. All repairs, parts, supplies, accessories, equipment and devices affixed to any Unit shall become forthwith the property of CCEC (except such as may be removed without in any way affecting the originally intended function or use of such Unit). User will not, without the prior written consent of CCEC, affix or install any Unit leased hereunder to or in any other personal property or to or in any real property.

**THIS FORM FOR USE IN ALL STATES EXCEPT INDIANA, NEW YORK AND OKLAHOMA.**

CCEC 14485 D

7. Sublease, Assignment or Encumbrances by User Prohibited.

7.1 User shall not sublease any Units leased hereunder nor shall User assign this Lease, or any of the User's rights or interest in any Units, except with the prior written consent of CCEC.

7.2 User shall not mortgage, pledge or otherwise encumber any Units, or its interest therein, or permit the same to become encumbered.

8. Expenses, Fees, Taxes. User shall pay all costs, expenses, fees and charges incurred in connection with the use and operation of Units during the lease terms thereof, and all taxes whatsoever by whomsoever payable (other than Federal or State income taxes of CCEC) on or relating to the Units leased hereunder and the purchase, sale, rental, use or operation thereof. User shall reimburse to CCEC, upon demand, as additional rent, the amount or amounts of any such costs, expenses, fees, charges and taxes paid by CCEC. It is the intent of this Agreement that CCEC shall receive the rent hereunder as a net return on the Units leased hereunder.

9. Loss or Damage of Units. All risks of loss or damage of Units leased hereunder, from whatever cause, hereby are assumed by User during the entire lease term of the Unit, and until final settlement is made pursuant to Section 14, notwithstanding any arrangements made for the sale of the Units pursuant to Section 13 or otherwise. If any Unit should be damaged, but be capable of being repaired and if the applicable insurance proceeds be insufficient to pay the cost of repairing the same, User shall either repair or replace the same, at User's cost. If any Unit should be damaged beyond repair, or destroyed, and the wreckage thereof be available for sale, the wreckage shall be sold and final settlement made as provided in Section 13 and Section 14; provided however, that if the wreckage should not be available for sale, User shall pay to CCEC forthwith an amount equal to unpaid rental for the unexpired portion of the initial term of the lease with respect to such Unit, or of the renewed or extended term, as the case may be.

10. Insurance.

10.1 User assumes all risks and liability for the maintenance, repair, use, operation and storage of all Units leased hereunder, and for injuries or deaths of persons and damage to property, howsoever arising from or incident to such maintenance, repair, use, operation or storage, whether such injury or death to persons be of agents or employes of User or of third parties, and whether such damage be to property of User or others.

10.2 User shall provide adequate insurance against liability for bodily injury and property damage from the time a Unit is delivered to User until the Unit is sold and legal title passes to the purchaser thereof.

10.3 User shall provide adequate insurance against loss or damage to the Units due to risks insured against by a policy of fire, theft and comprehensive insurance.

10.4 User shall deliver to CCEC, prior to the beginning of the lease term with respect to any Unit, or prior to the effective date of any cancellation or expiration of such insurance, as the case may be, the insurance policy, a certificate or other evidence, satisfactory to CCEC, of the maintenance of the insurance required hereunder.

11. Indemnity. Regardless of any insurance provided in Section 10, User shall at all times be liable to and indemnify and save harmless CCEC from and against any and all claims, demands, liabilities, loss, costs and expenses on account of death, bodily injury or property damage, including the loss of use of the property damaged, occasioned by or alleged to have been occasioned by any Unit and its ownership, maintenance, repair, use, operation or storage during the term it is leased hereunder. User shall also be liable to indemnify and save harmless CCEC from and against any loss, damage or destruction of any Unit. This indemnity shall not be affected by any termination of this Lease, or the lease with respect to any Unit.

12. Return of Units. At the expiration of the lease term with respect to any Unit, User shall, upon demand, return such Unit to CCEC, at such place as may be designated by CCEC, in the same operating order, repair, condition and appearance as when received, excepting only for reasonable wear and tear, and damage by any cause covered by collectible insurance; provided however, that such place shall not be more than fifty (50) miles from the location of the Units, and provided further, that User, in lieu of returning any Unit to CCEC and after promptly notifying CCEC of its intent so to do, may arrange for the immediate sale of such Unit, and transmit to CCEC the net resale proceeds delivered therefrom, subject to the provisions of Section 13 and Section 14.

13. Sale. Notwithstanding Section 2, at any time after the first twelve (12) months of the lease term with respect to any Unit, User may, by written notice to CCEC, elect to terminate this Lease with respect to such Unit. If User should so elect, User promptly thereafter shall arrange for the sale of such Unit by bona fide sale in the open market. No such sale shall be made without the prior written approval of CCEC. If approved, CCEC shall, upon written request of User, execute, or cause to be executed, and transmit promptly to User all bills of sale and other documents necessary to effectuate such sale. Upon the sale of any Unit, User shall deliver to CCEC forthwith the net amount received by User from such sale after deduction of all expenses incurred by User in connection therewith, said amount being referred to hereinafter as the net resale proceeds of such Unit.

14. Final Settlement. Nothwithstanding Section 2, upon receipt by CCEC of the net resale proceeds of any Unit as provided in Section 9 and Section 13, or upon receipt by CCEC of the proceeds of any insurance paid to CCEC because of the loss or destruction of a Unit, CCEC shall refund to User, as an adjustment of the rental payable hereunder, the amount (if any) by which the sum of (a) the net resale proceeds, or such insurance proceeds received by CCEC, and (b) the total of all of the rental payments (including the Advance Rental) made to CCEC by User, exceeds the total rental herein provided for the term of the lease with respect to such Units, and, if this Lease be renewed or extended, the total rental herein provided to be paid to CCEC by User with respect to such renewal or extended term. If such sum should be less than the total rental herein provided for the term of the lease with respect to such Units, and, if this Lease be renewed or extended, the total rental herein provided to be paid to CCEC by User with respect to such renewed or extended term, User shall pay such deficiency to CCEC, as additional rental, promptly upon demand.

15. Default.

15.1 Time is of the essence hereof. If User should default in the payment of any installment of fixed rentals, or any other sums payable by User to or for the account of CCEC hereunder, or if User should breach or default in the performance of any other of the terms and conditions hereof, and any such default or breach should continue for more than ten (10) days after CCEC shall have demanded payment or performance thereof in writing, or if a petition under any Chapter of the Bankruptcy Act, as amended, or for the appointment of a receiver of any part of the property of User, or any other proceedings for the relief of debtors, be filed by or against User, or if User should make a general assignment for the benefit of creditors, should suspend business or commit any act amounting to a business failure, or if an attachment be levied or tax lien be filed against any of User's property, or, if User should make any voluntary assignment or transfer of User's interest as lessee hereunder (in a manner or to a person not permitted by the terms hereof) or all or substantially all of its property, then, in any of such events (each of which shall constitute a breach of this Lease), CCEC, at its option, by notice in writing to User, may declare this Lease in default. Thereupon CCEC shall be entitled to possession of all Units then subject to this Lease, and CCEC, by its agents, may take possession of the Units wherever the same may be found, and for that purpose may enter upon any premises of User. CCEC shall hold the Units so repossessed free and clear of this Lease and of any of the rights of User hereunder. In any of such events, CCEC shall be entitled to recover from User, as liquidated damages and not as a penalty for the breach of this Lease, all unpaid fixed rentals for the period up to the time that CCEC obtains possession of the Units, together with all additional rentals and other sums payable by User pursuant to any of the provisions of this Lease then owing and unpaid, and all costs and expenses, including court costs and an attorney's fees, incurred by CCEC in the enforcement of its rights and remedies hereunder. CCEC shall retain all rental and additional sums paid by User to CCEC hereunder with respect to all Units, and CCEC shall retain all resale proceeds, refunds and other sums, if any, then in its possession which, had this Lease not been declared in default, otherwise would be payable to User hereunder, in accordance with the provisions of Section 14, and shall apply same and all or any portion of the Advance Rental then held by CCEC against User's liability under this Section 15.

15.2 CCEC may, without notice, but shall not be obligated to, lease the Units, or any of them, for such period, rental, and to such persons as CCEC shall elect and shall apply the net proceeds of any such renting in payment of the rent and other obligations due from User to CCEC hereunder, by acceleration or otherwise.

15.3 CCEC may, without notice, but shall not be obligated to, sell such Units, or any of them, at public or private sale or sales, upon such terms as CCEC may deem advisable. In the event of any such sale or sales, CCEC shall, in addition to all other rights

or remedies, hereunder, be entitled to retain, as liquidated damages and not as penalty, all proceeds of any and all such sales, and to recover from User all additional rents in respect of the Units sold, determined with respect to each Unit as provided in Section 14. CCEC may bid for or purchase any or all Units at any such sale.

15.4 Repossession by CCEC as aforesaid and any sale or sales made by CCEC of any Unit so repossessed shall not affect the right of CCEC to recover from User any and all damages which CCEC shall have sustained by reason of the breach by User of any of the covenants or the terms of this Lease.

16. Miscellaneous.

16.1 This agreement is, and is intended to be a lease, and User does not acquire hereby any right, title or interest whatsoever, legal or equitable, in or to any of the Units, or to the proceeds of the sale of any Units, except its interest as lessee hereunder.

16.2 CCEC warrants that, if User performs its obligations under this Lease, User shall peaceably and quietly hold, possess and use the Units during the entire lease term, free from any interference or hindrance.

16.3 The relationship between CCEC and User shall always and only be that of lessor and lessee. User shall never at any time during the term of this Lease for any purpose whatsoever be or become the agent of CCEC, and CCEC shall not be responsible for the acts or omissions of User, or its agents.

16.4 CCEC's rights and remedies with respect to any of the terms and conditions of this Lease shall be cumulative and not exclusive, and shall be in addition to all other rights and remedies in its favor.

16.5 CCEC's failure to enforce strictly any provisions of this Lease shall not be construed as a waiver thereof or as excusing User from future performance.

16.6 The invalidity of any portion of this Lease shall not affect the remaining valid portions thereof.

16.7 User specifically agrees that Units shall at all times and for all purposes be considered personal property, notwithstanding the manner or mode of attachment to real estate.

16.8 All notices shall be binding upon the parties hereto if sent to the address set forth herein (unless a subsequent address has been furnished, by certified mail, by one party to the other).

16.9 This Lease constitutes the entire agreement between the parties hereto. Any change or modification to this Lease must be in writing and signed by the parties hereto.

IN WITNESS WHEREOF, User has duly executed this Lease this ....*7*.... day of ....*October*.............., 19 *63*

at .......*Plattsburg   Missouri*...............................................................................

ATTEST or WITNESS:

.......*Jammie Woods*.....................

Lessee-User   (Trade, Partnership or Corporate Name)

BY ...*Virgil T. Colley*.............

B *Imogene W. Colley*  Title *Partners*

———————— Complete All Blank Lines To This Point Before Submitting to CCEC ————————

COMMERCIAL CREDIT EQUIPMENT CORP.

Accepted this.. ...*7*..........day of ...*Nov*.............., 19 *63*  BY ...*R. D. McGinnis*..................

Count I in each pleading involves CCEC Exhibit 1 which is identical to Exhibit 8 except that it is dated May 8, 1964, and covers the Fox Forage Harvester, Pickup Hay Unit, and Corn Harvester.

The Colleys experienced financial problems in late 1964 resulting in foreclosure by their bank on their dairy herd and default on their payments to CCEC. CCEC repossessed the equipment described in Exhibits 1 and 8 February 23, 1966. On April 20, 1966, CCEC sold the equipment described in Exhibit 1 and, on May 26, 1966, CCEC sold the equipment described in Exhibit 8. The Colleys were credited with the amounts realized by the sales and, as stated in appellant's brief, "[s]uit for the difference was then filed."

The governing statutes follow:

"428.100. *Conditional sales void as to creditors unless recorded.* In all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments, or shall be leased, rented, hired or delivered to another on condition that the same shall belong to the person purchasing, leasing, renting, hiring or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain to the vendor, lessor, renter, hirer or deliverer of the same, until such sum, or the value of such property, or any part thereof, shall have been paid, such condition, in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers in good faith, and creditors, unless such condition shall be evidenced by writing exe-

**334**

cuted, acknowledged and recorded * * *."

"428.110. *Duty of vendor before taking possession of property.* Whenever such property is sold or leased, rented, hired, or delivered, it shall be unlawful for the vendor, lessor, renter, hirer or deliverer * * * to take possession of said property without tendering or refunding to the purchaser, lessee, renter or hirer thereof, or any party receiving the same, the sum or sums of money so paid, after deducting therefrom a reasonable compensation for the use of such property; which shall in no case exceed twenty-five per cent of the amount so paid, anything in the contract to the contrary notwithstanding, and whether such condition be expressed in such contract or not * * *."

■ The parties' contentions involve a proper construction of the contract between them. The real character of the instrument is not determined from its form, but from the intention of the parties as gathered from the contract itself. In determining whether an instrument is a lease or a conditional sales contract and thus subject to the foregoing statutes, a test usually applied is whether the instrument requires or permits the transferee to return the property in lieu of paying the purchase price. If the return of the property is either required or permitted, the instrument will be held to be a lease; if the transferee is obligated to pay the purchase price, even though such price is denominated rental or hire, the contract will be held to be one of sale. *Kolb v. Golden Rule Baking Co.,* 222 Mo.App. 1068, 9 S.W.2d 840, 842[1][3] (1928). See also *RCA Corporation v. State Tax Commission,* 513 S.W.2d 313, 317[2] (Mo.1974).

The agreements between CCEC and the Colleys require, in paragraph 12, the return of the equipment placed to the use of the Colleys. The agreements do not state a purchase price, and they do not state the aggregate amount of rentals to be a purchase price or the value of the equipment for purposes of a sale. The obligation is to pay rentals, not a purchase price. There is no option to purchase; there is no obligation to buy; there is no provision for passage of title to the Colleys at any time or under any circumstances. The agreements gave the Colleys a right to use the equipment, and obligated them to return the same upon expiration of the use term. Paragraph 16.1 recites the intention of the parties that the agreement is a lease and that the Colleys acquire no right, title or interest in the equipment leased.

The foregoing elements distinguish the agreements between CCEC and the Colleys from conditional sales subject to the conditional sales statutes. *RCA Corporation v. State Tax Commission,* supra. Cf. *Kolb v. Golden Rule Baking Co.,* supra, where the contract stipulated that if defendant made no default in payments of any one or more of the installments of rental when due, plaintiff would execute and deliver to defendant a bill of sale for the property, the consideration of which shall be the above-mentioned installments of rentals which stamped the instrument as a conditional sales contract. See also: *Sanders v. Commercial Credit Corp.,* 398 F.2d 988, 989 (5th Cir. 1968), where the agreement was " 'intended to be a lease' " and lessee did " 'not * * * acquire any right, title or interest in * * * the Chattels, except the right to use the same under the terms' " of the lease and " 'upon expiration' " the lessor " 'agreed to return possession of the chattels' * * * a hornbook definition of a lease"; *In re Gresham,* 311 F.Supp. 974 (D.C.Va.1970), where the instrument in question was identical to the agreements between CCEC and the Colleys, and in reliance on *Sanders v. Commercial Credit Corp.,* supra, it was said to "represent most explicitly the necessary substantial provisions of a lease * * * the agreements were lease agreements and title remained in the lessor." 311 F.Supp. 976. See also Annotation: 17 A.L.R. 1435, 43 A.L.R. 1257, 92 A.L.R. 323, 175 A.L.R. 1386, where the collected cases construing instruments as conditional sales were construing agreements containing provision for transfer of title, consideration of which was payment without default of installment rentals.

Accordingly, the court erred in finding the instruments to be subject to the conditional sales statutes and in directing verdicts for the Colleys on Counts I and II of CCEC's petition and on Counts I and II of the Colleys' counterclaim.

Appellant does not question the sufficiency of evidence to sustain the jury verdict on Count III of Colleys' contention. Appellant contends only that the court erred in giving counterclaimants' verdict-directing instruction on Count III of their counterclaim.

CCEC did not include in its motion for new trial any allegation of error with respect to the verdict-directing instruction on Count III of the counterclaim to preserve it for review. Accordingly, the charge now made is not for review. Rule 78.07, V.A.M.R.

Appellant suggests consideration of the alleged error as a matter of plain error under Rule 78.08, V.A.M.R. The argument is that the instruction was confusing in its use of both lease and purchase terminology. The jury was to determine under Count III—whether the Colleys were defrauded through the misrepresentations of Mr. Woods, rather than whether the documents in evidence were leases or purchases. Accordingly, there is no showing of manifest injustice or miscarriage of justice to require relief by way of plain error. Rule 78.08, supra.

Judgment on Count III of defendants' counterclaim affirmed; judgment on directed verdicts on Counts I and II of plaintiff's petition and on Counts I and II of defendants' answer and counterclaim reversed, and cause remanded.

All concur.

